JANVIER, Judge.
Defendant, George A. Blair, a general contractor, undertook, by written contract, to build a small residence for plaintiffs, Mr. and Mrs. Mike Seminary. The contract price was $3,000.00. There was no formal acceptance of the work, but Mr. and Mrs. Seminary moved into the building. Thereafter they brought this suit against Blair, alleging that there were certain defects in the building and that certain work was unfinished; that to remedy the work would cost $860.00, and that in addition it was necessary for them to install new sewer lines, repair the water line, and to install a new closet combination, and that to do this work required an additional $112.00.
Plaintiffs admitted that there was due to Blair on the original contract $150.00, and they therefore prayed for judgment against Blair in the sum of $962.00, subject to a credit of $150.00.
Blair admitted that he had entered into the contract, but averred that the entire work contemplated by it had been done and that plaintiffs had accepted the building and had expressed themselves as satisfied. He denied that plaintiffs were entitled to any amount for making repairs or for completing the work, and, assuming the position of plaintiff in reconvention, he alleged that there was due him under the contract a balance of $150.00, and he prayed for judgment in reconvention for that amount. •
There was judgment for plaintiffs against defendant in the sum of $860.00, subject to a credit of $150.00, and the reconventional demand was dismissed. Defendant has appealed.
The contract is evidenced by a written offer made by Blair and accepted by Mrs. Seminary apparently on August 13th, 1946. It may be called “sketchy” in the extreme, but under it Blair undertook, for a contract price of $3,000.00, to demolish an old structure owned by plaintiffs, to salvage all usable materials, to himself supply “all other materials needed” and to " * * * build up one frame building 24 x 43 according to plan.”
It is conceded that there was no plan except possibly in the heads of the contracting parties.
While there is some dispute as to when the building was delivered to plaintiffs, the record 'convinces us that they moved into it on or about April 11th, 1947, and that, at that time, there remained due to Blair on the contract price $150.00. On April 25th, 1947, Blair, through his attorneys, made demand on Mr. and Mrs. Seminary for the payment of this balance and, under date of April 30th, 1947, the attorney for Mr. and Mrs. Seminary answered, calling attention to certain specified defects in the building and advising that the necessary repairs would cost “far in excess of $150.-00.” In this letter it was suggested that it was Blair’s duty to make the repairs and that if Blair would do this, Mr. and Mrs. Seminary would “be glad to pay any unpaid balance.”
The defects and the unfinished parts of the work were listed in the letter as follows:
“1. The sheet rock used in the interior on inside walls has never been sealed.
*879 “2. Blair contracted for two coats and only supplied one coat.
“3. Under the contract, Blair was to furnish a new bathtub, new toilet and new wash basin but instead put in second hand fixtures. All three leak and the toilet is unusable.
“4. Blair was to install plumbing fixtures and so installed pipe running from the toilet so that refuse therefrom backs into the front of the house as well as underneath the house.
“5. The walls throughout the house are cracking apart
“6. The doors in the house cannot be shut or locked.
“7. The tile drain boards in the kitchen are improperly cemented at verying heights and, therefore, will not drain.”
The record leaves no room for doubt that the work was done in a very slipshod manner and that most of the complaints were well founded. There is no doubt at all that the building was not level and that the foundations were not properly constructed and that, as a result, very shortly after the plaintiffs moved into the building it became almost impossible to open or close most of the doors.
Mr. Perez, admittedly “a qualified architect or building expert” condemned the building most severely. He said that the frame building had been put upon concrete blocks “set on poured concrete footings,” and he added: “We don’t put those there.” At this point counsel for defendant vehemently objected that no claim had been made for defective foundations. This objection was not well founded for the reason that the purpose of showing that the foundations were improper, was not to make a claim for the foundations, but to show the reason why the building was not level and why the doors could not be closed properly. The architect also added: “The obvious appearance of the house when observed is that it was built with a minimum amount of skill and workmanship. It was done by mechanics that just are not familiar with construction of a first class or the average small type of residence. Concrete footings were poured on the surface of the earth. It sluffed off from line.”
He described the “unlevelness” of the building, saying: “The entire perimeter of the sills are unlevel.” And he added that a “lot of this unlevelness could have developed from the poorly executed foundation and block work.” He added also: “The construction of the joists and sills violates a basic rule in house construction in that the body of the house does not have its individual foundation or support.”
It was shown that, possibly a week after plaintiffs had moved into the residence, the sewer line from the toilet failed to function and it developed that it was stopped up and apparently that the plumber employed by the contractor had merely connected the new sewer line with what remained of the old. Apparently the plaintiffs conceded that the item expended by them for repairing this defect was not chargeable to the defendant and therefore this item of $112.00 was eliminated from the claim.
The truth of the matter seems to be that the contractor made a very cheap price and then attempted to make his cost come within the price which he had made.
Near the end of his testimony he was asked whether, on such a job, he would use the same type of workmen as those he would use on an expensive job. He answered: “No, sir,” and he then admitted that, with the possible exception of his nephew, he did not use “qualified” men on the job. He said: “The price is involved. If I charge you $6,600.00 to build the same house it would be quite different.”
On behalf of defendant it is strenuously argued that, although there may have been some defects, none of them was of any importance and that each could have been remedied at nominal cost. It was also argued that plaintiffs should not be heard to complain because they accepted the work by moving into the house.
From what the architect stated and from other evidence in the record, we are convinced that the defects were of consider *880 able importance and that the repairing of them would have been quite expensive. Mrs. Seminary testified that she had obtained bids for the making of the repairs and that it would have cost $860.00. The architect stated that that would not have been enough to repair the defects which he saw.
The contention of the defendant, that the plaintiffs, having moved into the building, cannot be heard to 'complain of the defects, is not well founded. When the work was accepted, most of the important defects had not manifested themselves. Apparently the doors at that time would open and shut and the unevenness of the building was not apparent.
Counsel for defendant maintain that the plaintiffs have sustained no loss since the architect testified that, even in its condition as he saw it, the building was worth about $2500.00. And counsel argue that, since the plaintiffs contracted to pay only $3,000.00 for the house, which had been completed two years before the architect saw it, and since they should have been charged with the depreciation which would have accrued during those two years, they actually got value received for their money. We do not think that that is the question at issue. The defendant agreed to give plaintiffs a livable residence for $3,000.00 and he did not do so. And furthermore, even if plaintiffs did get a residence worth $2500.00, there • was used in it all of the old material which had come out of the former building and no doubt these materials had some value.
Our conclusion is that the record shows that to repair the defects, which were chargeable to the defendant, would have cost at least $860.00. This is the 'amount, therefore, to which plaintiffs are entitled. Of course, against this there must be credited the balance which remains due on the original contract price.
The judgment appealed from is affirmed at the cost of appellant
Affirmed.