346 So.2d 339 (1977)
Paul E. GEISLER
v.
LOUISIANA POWER AND LIGHT CO. and J. Melton Garrett.
No. 8109.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1977.
Rehearing Denied June 7, 1977.
*341 Henry L. Klein, New Orleans, for plaintiff-appellant.
Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart, Kenneth P. Carter, New Orleans, for defendant-appellee.
Before LEMMON, STOULIG and BEER, JJ.
BEER, Judge.
On September 10, 1973, Paul E. Geisler suffered serious electrical burns while working atop the roof of the Lapalco Shopping Center, then under construction, in Gretna, Louisiana. As a result, his left foot was amputated. Subsequently, he sued Melton Garrett, the owner of the shopping center, and Louisiana Power & Light Co. (hereafter, "LP&L"), owner of the overhead electric power line located at the site of the accident, and, by supplemental pleadings, added other defendants. LP&L denied negligence, pleaded Geisler's contributory negligence and assumption of risk, and filed various third party demands. Prior to trial, Geisler settled with some defendants and, during the first day of trial, entered compromise agreements with all remaining defendants except LP&L, who, thereupon, reserved its right to pro rata reduction by reason of the settlement. The trial lasted four days and resulted in a jury verdict (on special interrogatories), finding negligence on the part of LP&L and contributory negligence on the part of Geisler. Thereupon, Geisler's demand against LP&L was dismissed, as was the petition of intervention filed by his workmen's compensation insurer, Maryland Casualty Co. A motion for new trial was denied, and Geisler devolutively appeals. LP&L answered the appeal to protect its right to pro rata reduction of any judgment rendered against it.
At trial, Geisler testified that he had worked 16 years for Poley's Sheet Metal, Inc., doing "gutter work and downspouts." He had been working at the construction site for about a week prior to the accident and had inspected the premises "to see where the drains were going through the front of the building." On the day of the accident, Geisler arrived at the site around 8:00 a. m. and began installing "L-flashing" (a 10-foot, L-shaped piece of metal which covers the crack formed at the joint between the wall and the side of the building to prevent water seepage to the interior). After lunch, he installed fiberglass "roof jacks" which covered the pipes protruding from the roof to prevent leakage from the pipes. His next job was to install 20-foot gutters. Geisler decided that the best method of getting the gutters from the floor of one of the interior rooms of the building (where they were stored) to the roof was through an air conditioning duct opening. With the assistance of Vernon White, he maneuvered the length of gutter up to the opening. Then, he and White went to the front of the building and climbed a ladder to the roof. Geisler could see six or seven feet of the gutter protruding from the duct opening. He was aware of the proximity of the power lines but contends that he did not realize that they were uninsulated and energized since he saw no warning sign to indicate that there was high voltage in the lines. With his back to the lines, he and White negotiated the first gutter section out of the opening, "hand over hand," and, together, they carried it to the edge of the building. The second gutter section was handled in the same manner. During the maneuvering of the third section of gutter, Geisler suffered electrocution. White was not electrocuted.
On cross-examination, Geisler acknowledged that he was aware that power equipment was being used at the construction site and realized that it was dangerous to allow metal to touch the overhead power lines presumably supplying electricity to the building site. He also acknowledged that from the interior of the building, looking up through the air conditioning duct opening selected for the upward passage of the gutter sections, one could see the power *342 line approximately 10 feet from the edge of the roof. He did not instruct his helper, White, to watch out for the power lines, nor did he position himself in a way anticipated to avoid contact between the lines and the metal gutter section as he pulled the guttering out of the opening in the roof even though the power lines were at his back and a portion of the gutter was leaning against (and beyond) his shoulder.
At no time did he request LP&L to temporarily de-energize the power lines in question.
Vernon White testified that he was not touching the gutter section when the accident occurred. His testimony regarding the events leading up to the accident generally corroborate Geisler's account. Asked during cross-examination if he knew that one who works with sheet metal on a roof top must be on the lookout for overhead power lines, he responded: "Common sense would tell you to look out for that."
John Poley, president of Poley's Sheet Metal, Inc., testified that he had been on the roof prior to the accident and could see the power lines at that time, but did not realize that 13,800 volts ran through them. He was aware that the service connection at the back of the shopping center site was sufficient to operate power tools. He did not request that the lines be de-energized and had, previously, shown Geisler ". . . the pole where he could pick up his service for his drill motor and stuff, and that was in the back of the shopping center."
In Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La., 1976), plaintiff was electrocuted while holding a cable which came in contact with a power line. The Supreme Court applied general principles of negligence to measure the injured party's conduct:
"Furthermore, as we perceive the question of negligence, the determinative issue is always one of reasonableness or duty i. e., did the party's conduct conform to the standard of care that would be exercised by a reasonable man; or did the conduct breach a duty imposed upon the party to protect against the particular risk from which the accident resulted. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Tri-State Insurance Co. v. Tidewater Trailer Mfg. Co., 312 So.2d 353 (La.App. 2d Cir. 1975); Page v. Green, 306 So.2d 847 (La.App. 2d Cir. 1975); Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1972)."
Here, Geisler made the decision to maneuver long pieces of metal guttering in close proximity to power lines. The jury found this conduct to be contributorily negligent. We may not substitute our own factual determinations for well-supported findings by the trier of the fact. Dyson v. Gulf Modular Corp., supra; Canter v. Koehring Co., 283 So.2d 716, 724 (La., 1973).
Appellant's able counsel vigorously contends that LP&L committed reversible error by placing certain federal regulations into evidence. Our review of the record indicates that during the cross-examination of Mr. Poley, counsel for LP&L posed various questions concerning adherence to regulations of the Occupational Safety and Health Administration, particularly those concerned with an employer's duty to request that electrical circuits be de-energized prior to allowing his employees to commence work in close proximity thereof. However, the record also shows that counsel for Geisler posed questions to Mr. Poley regarding fulfillment of his alleged obligations covered by those same regulations. After Poley had answered those questions propounded by plaintiff's counsel, the following took place:
MR. TAGGART: (COUNSEL FOR LP&L)
Your Honor, in connection with the last witnesses' testimony, on my cross examination I would like to introduce into evidence Section 1926-240 of the OSHA regulations.
THE COURT:
Allright, sir. Ladies and gentlemen of the jury, the document that has been just *343 introduced into the record is a document you notice I didn't ask Mr. Klein if he objected or didn't object. This is a Federal regulation authorized by Congress and is one of the laws that control this type of situation. We have the duty to follow that law the same as we do all Louisiana law. This is a law that creates whatever it creates in your mind, you are to read this and give it your best interpretation.
MR. KLEIN: (PLAINTIFF'S COUNSEL)
Let me reserve my right to introduce sections of that.
THE COURT:
Certainly, the entire regulations will be part and parcel of the record of this case. Counsel for the plaintiff may bring in any part that he wants. For ease of handling Mr. Taggart has that one particular area that he is interested in, however, we will have the book available to you.
MR. TAGGART:
I have marked the photocopies and ask if these can be substituted for the true and correct copies of Section 1926-240 marked LP&L No. 5.
MR. KLEIN:
Your Honor, I am reserving my rights subject to these entire regulations.
Later, when the jury was recessed, plaintiff's counsel objected to the introduction of the OSHA regulations, stating: "I didn't get a chance to object on the record because it was improper to do so in front of a jury." LP&L's counsel observed that Poley was a third party defendant charged with proximately causing the accident by violating OSHA regulations. Since LP&L was seeking contribution from Poley, the regulations were properly material to the merits of the third party demand.
The trial judge refused to withdraw the regulations from the evidence, stating that his instructions to the jury would settle the issue. The jury returned and the trial resumed. After all the witnesses testified, the trial judge instructed the jury:
"You have seen some evidence and heard some testimony about OSHA, which is the Occupational Safety Act. OSHA does not govern the duties owed by the utility company to Mr. Geisler, and in determining the liability of LP&L, you are to concern yourselves only with the rules of negligence which I have given you."
Any confusion or distraction which may have been created by the introduction of the regulations was cleared up by the trial judge's instruction. Even assuming, arguendo, that it was improper for the jury to have been exposed to the regulations, such exposure was not prejudicial and would constitute harmless error. Furthermore, the objection came too late. In Jack v. Henry, 128 So.2d 62, 70 (La.App. 1st Cir., 1961), where there existed a chronology of trial events similar to those here existent, the court observed:
"At the time counsel for plaintiff objected to such evidence, the harm had already been accomplished considering that there were pages of testimony on this issue entered without objection on the part of counsel for plaintiff."
Appellant contends that the trial judge erred in refusing to instruct the jury regarding "momentary forgetfulness". The trial judge rejected same with the following explanation:
"The next charge was a document which I will mark, refused Charge No. 2, which I will put my initials thereon, which has to do with momentary forgetfulness. The Court refused this charge on the basis of provisions of Laine vs. Louisiana Power & Light Company being Page 35, Section 9 of 161 Southern Second No. 29. The Court does not believe that this was the circumstances momentary forgetfulness that would be applicable."
The trial judge made no comment on his refusal to give plaintiff's requested charge regarding LP&L's alleged duty to warn, but, after discussing his reasons for rejecting certain proposed charges from both sides, he asked both counsel whether they had any objections. Counsel for plaintiff *344 objected to one instruction not challenged in this appeal. The trial judge noted this single objection, whereupon plaintiff's counsel stated:
"Other than that, I have no objection to the ones that were read. I would like to note for the record say that I object to the failure of the Court to read the ones marked refused, the ones submitted by me."
LSA-C.C.P. Art. 1793 provides, in part:
"A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
Blanket objections do not comply. See: Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La.App. 1st Cir., 1975) writs den. La., 325 So.2d 279.
Plaintiff's counsel also objected to the court's refusal to apply comparative negligence. Yet, scattered sentiment favoring the adoption of a comparative negligence doctrine[1] certainly cannot form a proper basis for contending that error has been committed, and we must reject this contention out of hand.
Finally, appellant asserts that the trial court erred in declining to answer two written questions posed by the jurors during their deliberations:
1. Is there a government law that requires public utilities, especially covering overhead power lines, to take extraordinary precautions to protect life and limbs?; and
2. Would this mean that this would require more than the strict variance of nine (9) feet?
The judge instructed the jurors to rely on their recollection of his original instructions. In Renz v. Texas and Pacific Railway Co., 138 So.2d 114 (La.App. 3rd Cir., 1962), the court quoted 89 C.J.S. Trial § 475 as follows:
"According to the rule generally adopted, the court may, at the request of the jury, give them further instructions after they have retired to deliberate, since the interests of justice require that the jury have full understanding of the case, and the court may, without the consent of counsel, recall the jury and give additional instructions although but one juryman requests them. Furthermore, it has been said that the trial court has the same right to instruct the jury when it returns for further instructions after having retired as before the jury retires for the first time. * * *
It has been held that it is not error to refuse to give a further instruction requested by the jury, or to answer a question by the jury or a juror, as where the giving of additional instructions would only serve to confuse the jury, where the question was not concerned with substantive law, where the jury requested an answer to a question which was in the province of the jury to answer, or where the requested additional instruction was on an issue not presented by the pleadings or evidence. It is not error for the court to refuse to comply with a general request further to read the law of the case which had already been read to the jury. While the request may properly be refused, where there is a statute providing that no further instructions shall be given after the argument begins, or where the request is for an instruction which could not be given, it is usually said to be the duty of the court to give such additional instructions when requested, and a prejudicial refusal to do so has been held reversible error. * * *"
We find that the refusal to further instruct the jury was within the court's discretion and did not constitute reversible error.
The judgment of the 24th Judicial District Court for the Parish of Jefferson is affirmed. All costs of this appeal must be borne by the appellant.
AFFIRMED.

*345 ON APPLICATION FOR REHEARING
Before LEMMON, STOULIG and BEER, JJ.
PER CURIAM.
For such weight as a reviewing court may see fit to accord, we agree with able counsel for applicant that a sensible interpretation of the transcript would support his contention that the actual words spoken by him in making a particular objection were: "Your Honor, I am reserving my rights to object to these entire regulations," rather than the words actually contained in the transcript which are: "Your Honor, I am reserving my rights subject to these entire regulations."
Our opinion remains unaffected thereby, but we believe that counsel should have the opportunity to make such use of this observation as he determines appropriate in such further proceedings as he may see fit to institute.
In this same vein, we note that our "out of hand" rejection of able counsel's articulate and perceptive views regarding the doctrine of comparative negligence should not be interpreted, in any sense, as an intellectual rejection of same. As an intermediate appellate court, we simply do not have the authority to read comparative negligence into the law of the State of Louisiana no matter what the individual or collective views of this panel may be.
With these observations, the application for rehearing must be denied.
REHEARING REFUSED.
NOTES
[1] The author of this opinion pleads guilty to harboring such views.