juror would be nothing short of a miscarriage of justice.

"This was the last case to be tried during that week of court. The lawyers in this case, all knew Mr. Brett well, they knew how many defendants had been convicted and how many had been acquitted. They knew that Mr. Brett had served on most of these juries and they knew that he had been foreman of the petit jury in at least two of these cases. Knowing these facts notwithstanding they were entitled under the law to twenty-four peremptory challenges, they exhausted but four of such challenges. I did not have the slightest doubt but that this juror fully realized the importance and the solemnity of the service imposed on him as a juror in this case and other cases; but if I had entertained any doubt whatever, I would have unhesitatingly set the verdict aside."

For the reasons stated and upon the authority of State v. James, 165 La. 822, 116 So. 199, the verdict and sentence are affirmed.

**(119 So. 405)**

**No. 29461.**

**DIXIE BLDG. MATERIAL CO., Inc., v. MASSACHUSETTS BONDING & INS. CO.**

**In re MASSACHUSETTS BONDING & INS. CO.**

Nov. 26, 1928. Rehearing Denied Jan. 2, 1929.

Frymire & Ramos, of New Orleans, for plaintiff.

Louis R. Hoover, of New Orleans, for defendant.

ROGERS, J. This case is before us on a writ of review for the interpretation of certain provisions of Act 298 of 1926. The plaintiff company furnished materials to a subcontractor, but neglected to file a lien against the building in which they were used. Approximately six months after the expiration of the delay accorded by the statute for the preservation of liens, the furnisher of the materials sued the subcontractor and the surety company to recover the amount due on its account. The question for decision, therefore, is whether under the statute a furnisher of materials to a subcontractor is entitled to a recovery from the surety on the general contract. Both of the courts below answered the question in the affirmative. Our conclusion is that the answers are correct.

The laws regulating building contracts are sui generis, and the general laws regulating suretyship have, ordinarily, but little application to cases within their purview. Therefore we must look solely to the legislative act in order to ascertain the obligations of the parties litigant. The pertinent sections of the statute are Nos. 1, 2, 3, 4, 5, 6, and 14.

Section 1, in the most sweeping terms,

grants a lien upon immovable property for the payment of all persons who have furnished labor or materials used in the construction or improvement of such property.

Section 2 provides for the execution of a written contract and for its recordation in the proper office in order to preserve the lien created by the statute. This section also requires the owner of the immovable property to exact from his contractor a bond, the condition of which, in accordance with the terms of the law, shall be "the true and faithful performance of the contract and the payment of all subcontractors, journeymen, cartmen, workmen, laborers, mechanics and furnishers of material, machinery or fixtures jointly as their interest may arise." The section further sets forth the method whereby the owner who has secured from his contractor the statutory bond may obtain the release of his property from all liens arising out of the building contract.

Section 3 declares that the contractor and his surety shall be solidarily liable for all labor and materials used in the work, and that, notwithstanding the erasure of the inscription of the contract, the surety's liability shall be unaffected and he shall be bound to the same extent as the contractor.

Section 6 provides that as to any claim for labor or material the surety shall be limited to the same defenses the contractor is authorized to make.

Section 14 contains the declaration that nothing in the act "shall be so construed as to deprive any claimant of his right of action against the surety signing any bond furnished in connection with any building contract or subcontract, or against the principal obligor thereunder, which right of action against such obligor and said surety shall accrue at any time after maturity of the claim of the said claimant." The section also provides that any action against the surety must be brought within a year from the registry of

the owner's acceptance or of notice of the contractor's default.

If sections 3 and 6 be construed literally and independent of the other provisions of the statute, it would appear that the surety is bound only to the extent that the contractor is bound. Under such a construction, the relator would not be liable, since, admittedly, it is the subcontractor and not the contractor who is primarily responsible for the payment of plaintiff's claim. But that construction would defeat the object of the statute, which is twofold, viz.: First, to protect the claims of all persons performing any work on or furnishing any materials to a particular building, by creating liens in their favor on the building and the land upon which it stands; and (2) to protect the owner of the immovable from the operation of such liens by requiring the contractor to execute a bond for that purpose. Therefore that construction must be rejected for one that is within the reason and the spirit of the law. In order to ascertain these, the whole and every part of the statute must be construed together.

Thus, section 1 creates a lien in favor of all persons who furnish material used in the construction or repair of a building. It makes no discrimination between the furnisher of material to a subcontractor and the furnisher of material to the principal contractor. All materialmen are placed on an equal footing. Section 2 prescribes the method of preserving the lien created by the statute. The section also imposes upon the owner the obligation of exacting a bond from the contractor, one of the conditions of which must be the payment of all furnishers of material as their interest may appear. Again, the law makes no discrimination between the furnisher of material to a subcontractor and the furnisher of material to the principal contractor. Its mandate is that the bond shall secure the payment of the debts due all the materialmen. Sections 4 and 5 prescribe the method of proce-

dure whereby the owner, who has exacted bond from the contractor, may obtain the release of his property from the liens arising out of the contract, but without in any wise affecting or discharging the liability of the surety under the bond.

Section 14 specifically protects a claimant from any construction of the statute which would have the effect of depriving him of his right of action, accruing at any time after the maturity of his claim, against the surety on any bond, contractor's or subcontractor's, or against the principal obligor thereunder, limiting the delay in which the action must be brought against the surety alone to one year from the registry of the owner's acceptance or of notice of default of the contractor.

From the foregoing summary of the statutory provisions, it needs no extensive argument to show that the contractor's bond displaces the contractee's property as the security for the payment of all claims arising under the contract. If this were not so, the owner of the building would be wholly unprotected against claims due by subcontractors with whom he has had no dealings whatever. His property would be subject to the liens granted by the statute to such claimants, leaving him remediless if the principal contractor was financially irresponsible. Moreover, if the surety and the contractor should be dishonest the former could be relieved of all liability merely by the latter's letting out to subcontractors the entire work which he had undertaken.

Since the obligation assumed by the relator surety company was to pay plaintiff's debt, plaintiff had a right of action to enforce its payment, which action was brought within a year, as required by the statute.

For the reasons assigned, the judgment of the Court of Appeal is affirmed, at relator's cost.

O'NIELL, C. J., and ST. PAUL, J., dissent.