36 So.2d 627

**COSTANZA et al. v. CANNATA et al.**

No. 38057.

June 1, 1948.

Rehearing Denied July 2, 1948.

Samuel M. Robertson, of Baton Rouge, for appellants.

Taylor, Porter, Brooks & Fuller, of Baton Rouge, for defendant-appellee.

FOURNET, Justice.

The plaintiffs, Michael A. Costanza and Paul S. Spedale, after having recorded their written acceptance of a building con-structed for them by the defendant Bernard A. Cannata, provoked this concursus pro-ceeding under the provisions of Act No. 298 of 1926, depositing the amount retained by them under the contract in the registry of the court and impleading the contractor; the New Amsterdam Casualty Company, the surety on the contractor's bond; and all of the materialmen who had filed liens against the building. In this same proceed-ing the plaintiffs sought to recover damages caused by the contractor's alleged failure to complete the building in accordance with the plans and specifications. They are now appealing from the judgment of the dis-trict court awarding them damages in the sum of $1,089, with attorney fees of $400. The defendant surety, answering the ap-peal, is asking that the judgment be reversed in so far as it awards the appellants dam-ages and that it be amended to reduce the attorney fees to an amount not in excess of $250.

On March 31, 1941, the plaintiffs entered into a contract with Cannata for the con-struction, on property belonging to them on Bayou Sara Road (also referred to as Sce-nic Highway) near the city of Baton Rouge, of a one-story concrete block commerical building in accordance with the plans and specifications prepared by L. P. Manson, attached to and made a part of the contract. This building was to be erected "in a per-fect and thoroughly workmanlike manner" at a cost of $9,800, 90% to be paid in in-stallments as the work progressed and the

remaining 10% to be retained by the plaintiffs until the building was completed and turned over to them free of liens and privileges. It was to be ready for occupancy on or before June 23, 1941, in default of which the contractor was to forfeit by way of liquidated damages $3 a day. In accordance with the provisions of Section 2 of Act No. 298 of 1926, the plaintiffs exacted of the contractor a bond, the condition of which was that he would truly and faithfully perform the contract and pay all subcontractors, laborers, and materialmen. The contractor furnished as the surety on this bond the New Amsterdam Casualty Company. The contract and bond were then recorded.

It appears that during the progress of the work Mr. Manson, who was checking for the owners, called their attention to the failure of the contractor to comply with the plans and specifications on a number of occasions and that when they remonstrated with the contractor he refused to proceed with the construction unless permitted to pursue the course he was following, leaving the job several times in protest. The plaintiffs reported these conditions to the local agent of the surety from time to time. Because of these delays and heavy rains, the building was not ready for occupancy on June 23, 1941. Shortly after July 1 the tenants who had leased half of the store from the plaintiffs appeared with their stock and fixtures loaded on trucks but were denied admittance to the building

by the contractor. Inasmuch as it was raining at the time, the contractor finally consented to this equipment being placed in the store, but he refused to turn over the keys to the building until the plaintiffs formally accepted the job. This they did on July 14, but only after the contractor had agreed to correct certain defects and complete the unfinished parts. The acceptance was recorded on July 16 following. In the meanwhile, in an effort to expedite matters, the plaintiffs had, on July 8, agreed to cancel their right to the liquidated damages for delay in delivering the building on June 23. Under these conditions, the plaintiffs and and their tenants occupied the building.

On August 4, 1941, the defects not having been corrected and the building not having been completed, the owners, through their architect, formally notified the contractor in writing of the items that had to be taken care of before the building would meet the requirements of the plans and specifications, as amended by the addenda, sending a copy of this letter to the agent of the bonding company. The agent, in turn, referred the matter to the contractor who, becoming ill on August 7, sought to have the work done from his bed with the assistance of his wife and, under her supervision, some of these items were taken care of. However, some of the work still not being acceptable and, in certain instances, not completed, the plaintiffs, in November, secured estimates of the cost of finishing the job from three contractors; these esti-

mates being for $1,049, $1,310, and $1,407.50. Despite the submission of these estimates to the surety, no further action was taken in the matter and the plaintiffs, in January of 1942, instituted this concursus proceeding seeking to have the liens recorded against the building by the materialmen and subcontractors cancelled and to recover damages in the amount of $1,533.05, the amount of the highest bid submitted to them the previous November, plus an amount of $125.55 for the correction of defective electrical equipment not included in the bid.

In its answer the surety company denied that the building had been constructed in a defective and unworkmanlike manner, pleading specially that the plaintiffs, by their formal acceptance of the building as it was, were estopped from questioning the quality of the work or the materials incorporated therein. When none of the impleaded materialmen answered the suit, many of them having filed separate suits against the surety previous to the institution of the concursus proceeding, the surety, on October 5, 1942, asked that each of these materialmen be served with a rule compelling them to assert their claims in this proceeding instead of in the separate actions filed by them and, in compliance with this rule, all of the parties formally appeared and asserted their respective claims.

On December 11 thereafter the plaintiffs, in order to meet the increased cost of material and labor, sought, in a supplemental and amended petition, to have the amount originally prayed for increased to $2,782, listing as remaining unfinished and defective with the estimated cost of each, the following: (1) Setting terra cotta coping on walls ($51.60); (2) calking all windows and door frames ($30); (3) painting all exterior wood, metal, and masonry including a coat of bondex on outside exposed surfaces ($351.60); (4) connecting downspouts from roof to storm sewer ($105.60); (5) reinforcing five trusses supporting roof ($480); (6) raising skylights on roof so water can run off ($108); (7) installing standard 20-year guaranteed roof and flashing ($681.60); (8) refinishing wood floors and levelling concrete in drug store ($853.56); and (9) replacing structural glass where broken ($120). They also sought to have the attorney fees increased to $766.63, and, while they sought to recover $125 as damages for merchandise ruined in one of the stores because of leaks, this claim has apparently been abandoned.

The defendant surety excepted to this petition on the ground that it was prescribed by the prescription of one year under the laws of this state, and particularly Section 14 of Act No. 298 of 1926.

On the issues as thus made up, the trial judge rendered judgment against the contractor and his surety in solido and in favor of the materialmen in the aggregate sum of $3,059.04, and in favor of the plaintiffs in the sum of $1,089, with attorney fees of $400; in favor of the surety and

against the contractor' in the amount the surety is required to pay under the judgment on behalf of the contractor; and cancelling the contract, bond and liens against the property. None of the parties appealed except the plaintiffs and it is their contention that they should have recovered a sum based on the cost of the material and labor under the conditions existing at the time they filed their supplemental petition rather than on the amount it would have cost to complete the work at the time the proceedings were instituted, before the inflationary spiral brought about by the declaration of war in the fall of 1941 had occurred.

The defendant surety, on the other hand, while conceding there were some minor defects in the building, contends (1) that the plaintiffs, by their formal acceptance of the building, waived their right to recover for any and all defects that were apparent to them and to their architect at the time the building was accepted, (2) that if wrong in this contention, then the recovery should be limited to the amount allowed by the trial judge; and (3) that the claim for increased damages and for defective construction not included in the original petition, has been prescribed by the failure to sue for them within one year following the recordation of their acceptance of the building under Section 14 of Act No. 298 of 1926.

■ We find no merit to this first plea. The record clearly shows that the plaintiffs accepted the building with the understanding that the items complained of would be corrected and completed. This was not only testified to by the plaintiffs, but is amply supported by the actions of the contractor who, after the acceptance, although ill at the time, sought to carry out his obligation thereunder with the assistance of his wife.

■ The plea of prescription is likewise without merit. Section 14 of Act No. 298 of 1926, relied on by the defendant, was clearly intended to limit the period within which the materialmen and laborers having claims against the building contractor for their part in the construction could bring an action against the contractor's surety. See, Dixie Building Homestead v. Massachusetts Insurance Company, 167 La. 399, 119 So. 405.

This leaves for our consideration, therefore, the amount to which the plaintiffs are entitled, if any, for the contractor's failure to complete the building in accordance with the plans and specifications.

■ When the contractor was formally notified in writing on August 4, 1941, with a copy to the surety, of the items that had to be corrected and completed, and the bonding company was thereafter furnished with three estimates secured by the plaintiffs for such work but did not authorize the plaintiffs to have the building completed under one of these bids, it assumed the risk attendant upon the possibility that a delay in having the work done would result in an increase in the ultimate cost because of fluctuating costs and cannot now be heard to

complain that, because of the declaration of war in the fall of 1941 with the resulting increase in the cost of labor and material, the plaintiffs were compelled to revise these figures in their amended petition in order that they might be fully protected because of these contingencies. Neither of the cases relied on by the surety in support of their contention is applicable or controlling here. Seaton v. New Orleans, 3 La.Ann. 44, was a suit for damages and loss of profits resulting from the breach of a building contract before the construction had even been undertaken, the suit having been filed before the arrival of the time for the full performance thereof. Vance v. Tourne, 13 La. 225, is only authority for the proposition that damages for failure to deliver stock under a contract of purchase is the difference between the purchase price and the amount of the stock on the open market on the date of the breach and not the stock market price at the time the suit was instituted, particularly where the purchaser neglected to put the seller in default at the time of the breach and only instituted proceedings some six months later when the stock had soared in value.

The only items listed in the supplemental petition and their costs that are seriously controverted are those listed under Nos. 5, 6, 7, and 9, in connection with which the defendants sought unsuccessfully to show that they had resulted from defective planning and unsuitable materials. All of these items are supported by the testimony of a competent contractor and the only effort made by the defendant to disprove those not controverted was limited to minimizing the extent thereof and establishing that they were not required under the contract and the attached plans and specifications.

We have carefully studied and analyzed the contract and the documents attached thereto, the testimony of the experts given in connection therewith, and the testimony of the parties to the contract, and we have come to the conclusion that the items listed in the supplemental petition cover matters that were required for the completion of the building "in a perfect and thoroughly workmanlike manner" and were either defectively constructed or not completed as called for. Our conclusion, therefore, is that the plaintiffs are entitled to recover the amounts listed in connection with them in the supplemental and amended petition.

■■ We now pass to the question of the amount to be awarded the plaintiffs as attorney fees. The trial judge fixed this amount at $400 and by their appeal the plaintiffs are seeking to have the amount increased to the $766.63 prayed for in the supplemental petition, while the defendant surety contends the recovery for this service should be limited to a reasonable fee for provoking this concursus proceeding, claiming that $250 for such service is ample.

The basis for the plaintiffs' right to attorney fees is to be found in section 10 of Act No. 298 of 1926, and it is limited to compensation for provoking the concursus

proceeding. It is not extended to include the services of such attorney in connection with the prosecution of the claims of the owner against the contractor and his surety. We believe the amount awarded by the trial judge in this case is excessive and that the amount suggested by the attorneys for the surety is ample.

For the reasons assigned, the judgment appealed from is amended in so far as it affects the defendant insurance company, the New Amsterdam Casualty Company, by increasing the amount awarded the plaintiffs, Michael Constanza and Paul S. Spedale, from $1,089 to $2,782, and by reducing the amount awarded as attorney fees from $400 to $250, and as thus amended, the judgment is affirmed. The costs of this appeal are to be borne by the defendant surety.

O'NIELL, C. J., absent.