184 So.2d 256 (1966)
Sidney A. RATHE, Plaintiff-Appellant,
v.
Thomas A. MAHER et al., Defendant-Appellees.
No. 6592.
Court of Appeal of Louisiana, First Circuit.
February 28, 1966.
Rehearing Denied April 4, 1966.
Writ Refused May 19, 1966.
Boris F. Navratil, of Breazeale, Sachse & Wilson, Baton Rouge, for appellant.
Alton J. Reine, Jr., of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
This is an appeal from a judgment of the lower court denying the plaintiff-appellant *257 recovery from the defendants the cost of correcting certain alleged inferior work performed by defendants in the construction of a residence for plaintiff. The plaintiff is Sidney A. Rathe, and the defendants are Thomas A. Maher and Bernard J. Sharkey, hereinafter most of the time referred to simply as the builder, and Maryland Casualty Company, surety on the performance bond furnished by the builder.
On April 24, 1958, plaintiff and the defendants entered into a written contract for the construction of the subject residence on the plaintiff's lot for the price and sum of $20,062. The residence was substantially completed and accepted by the plaintiff on August 20, 1958, and shortly thereafter he and his family occupied their new home.
Although the plaintiff itemized twelve deficiencies in construction, as shown by his original petition, correction of which he alleged would cost the sum of $9,675, increased by amended and supplemental petition to $13,000, he offered evidence, either through his own witnesses or those of the defendants, of the following defects:
1. Stairs are loose and noisy; show light through cracks;
2. Kitchen floor "floats" near rear exit, the vinyl tile covering the floor shows numerous hammer marks as well as other irregularities of the sub-flooring, and the tile has cracked near the sink;
3. Vinyl tile in entrance hall shows irregularities of the roughly finished concrete slab on which the tile is laid;
4. The frame of the rear exit door in the family room is not plumb;
5. Door between living room and kitchen and the wall adjacent thereto have not been refinished following rehanging of the door to correct previously existing defect therein;
6. Loose formica on kitchen counter top;
7. Cracked sheetrock in one of the upstairs bedrooms;
8. Separation of brick veneer wall from rear door frame and insecure brick veneer wall on rear of residence;
9. All exterior concrete work shows excess amount of pitting and surface imperfections; and
10. Holes cut in ceiling were cut larger than the base of the lighting fixtures.
11. Unevenness of floors in upstairs bedrooms.
In addition to these enumerated items, the defense witness, Mr. Percy J. LeBlanc, an architect who inspected the residence, found these defects:
1. Bottom edge of cedar wall shingles not trimmed straight at gable slope;
2. Mortar joints under window sills not raked;
3. Utility room cabinet not properly finished after being adjusted;
4. Nails not properly set in kitchen paneling;
5. Base of cabinet in kitchen sits out ¼" from wall;
6. Electrical fixture over sink not properly fastened;
7. Cabinet doors in bathroom not properly set;
8. Several door frames and casings are loose on second floor;
9. Door between den and kitchen improperly cut at bottom, and door stop loose;

*258 10. End of upper kitchen cabinet not plumb;
11. The wall oven not properly fastened into wall; and
12. Wood corners on paneling not matched, some round, some square.
The defendants' answer amounted generally to a denial of the plaintiff's claim, and additionally they contend after the lapse of over four years (this suit was filed April 24, 1963), by acceptance, laches and inaction, plaintiff is estopped to now assert any claim for the cost of remedying the alleged defects enumerated. Alternatively, if not estopped, they plead the defects are the result of normal wear and tear and not the result of the workmanship of the builder.
On joint motion of the parties, and on suggesting to the court that expert testimony regarding the nature of the alleged defects would be helpful to the court in resolving the technical questions anticipated in offering proof of the asserted position of the respective parties, the trial court appointed three experts to inspect the premises, one of whom was selected by the plaintiff, another by the defendants, and a third, Mr. Jasper Lamana, Jr., by the court.
There is no dispute between the parties as to the law applicable to the facts. Presented here is purely a question of fact Are these alleged deficiencies construction defects? If these complaints are found to be attributable to faulty construction, the plaintiff is entitled to recover the fair cost of correcting these defects. Then the additional question to resolve isWhat is the fair cost of making the corrections?
It is implicit in every contract of this nature for the work of the builder to be performed in a good workmanlike manner, free from defects attributable either to faulty material or poor workmanship.
LSA-C.C. Article 2762 provides:
"If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks."
And, LSA-C.C. Article 2769 provides:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
In an action such as this, the plaintiff bears the burden of proving the defects complained of were the result of badness of workmanship, and the cost of correcting the defects. See Merrill v. Harang (1940), La.App., 198 So. 386; Polizzi v. Thibodeaux (1948), La.App., 35 So.2d 660; Montague v. Milan (1953), La.App., 67 So.2d 351; Airco Refrigeration Service, Inc. v. Fink (1961) 242 La. 73, 134 So.2d 880; Federico v. Kratzberg (1964), La.App., 163 So.2d 843.
In resolving the issues of this case in favor of the defendants, the trial judge, inter alia, stated:
* * * * * *
"In a personal inspection of the property, by the Court, the Court found that there was a slight rise in the upstairs floor, which was apparently caused by the sagging of this overhang. The other defects mentioned by plaintiff appeared to the Court to have been the result of rather hard wear and tear on the premises. The Court was less than favorably impressed by *259 the upkeep of this residence by the owner. This may have been because the owner was unhappy with the house from the beginning; however, most of the defects that the Court found were defects that will happen to almost any house in this price range when the owner fails to properly maintain the house after it has been built and subjects the house to rather rough wear and tear. While it is true that the sag of the overhang possibly was caused by faulty plans which could not be attributed to the contractor, in toto, the fact that the contractor and the owner agreed to correct this sag by placing of an ornamental post would appear to this Court to estop the plaintiff from complaining now and demanding that the contractor go back in and reconstruct the upper floor of his house. There is, as I have stated, a slight rise in the upstairs floor. However, the Court does not feel that this is such a defect as to warrant ordering the defendants to pay the cost of completely renovating the upper floor, which the Court feels would be necessary, and which was apparently the reason for the high bid given by Mr. Lamana for repair. Mr. Lamana stated that he would not know what he would get into, once he started repair of the upper floor and it might entail taking the entire top floor down. For this, the Court does not feel that the defendants should be penalized, inasmuch as plaintiff agreed to the supports and accepted the house. All of the other alleged defects in the house, except for the holes for light fixtures, which would have been obvious to the owner at the time he accepted the house, are of such a nature that the Court is unable to determine whether they were caused by defective workmanship at the time the house was built or by improper maintenance and rough use by the plaintiff after the house was accepted. * * *."
A trial court cannot take judicial notice a certain condition does exist or does not exist from a personal inspection of the subject construction where the contrary condition is shown to exist by expert testimony unanimous in concluding such to be a fact. The trial judge erroneously concluded, in the face of unanimous and uncontradicted expert testimony to the contrary, the items of alleged construction defects were the result of "rather hard wear and tear." Even the defendant in charge of the construction work admitted in his testimony the cracked sheetrock in the upstairs bedroom was caused by jacking up the roof in his effort to correct the sagging overhang of the upper story, and the door between the living room and kitchen which he replaced because of a defect, and the wall adjacent to the door was unfinished and needed to be painted.
Aside from the testimony of the parties to this litigation, five witnesses testified to their findings based on a personal inspection of the premises. These witnesses included Mr. Robert M. Coleman, Jr., an architect whose testimony was offered by the plaintiff, Mr. Jasper Lamana, Jr., a contractor and expert appointed by the court whose testimony was offered during the presentation of the plaintiff's case in chief; Mr. Percy J. LeBlanc, an architect; Mr. J. Morton Myatt, a contractor; and Mr. Walter R. Bankston, also a contractor. The testimony of the last three named witnesses was offered by the defendant.
We believe that no useful purpose would be served herein to set down in detail the findings of all of the witnesses on each of the deficiencies complained of and on which proof was offered. It is correct to say that all of the witnesses found the existence of the items complained of by the plaintiff, however some, but not all of the defendants' witnesses considered the condition to be normal or not unusual in the construction of a dwelling.
*260 Our analysis of the testimony of Mr. Coleman and Mr. Lamana shows all of the complaints set out first hereinabove were construction defects. The defendant, Bernard J. Sharkey acknowledged the crack in the sheetrock in an upstairs bedroom and the need for refinishing the door and adjacent wall between living room and kitchen were construction defects that should be corrected.
Mr. Myatt found the stairs were improperly constructed and needed remedial work performed on them, that there was a bad job done on the kitchen floor. He recommended that the entire floor, including the subfloor, be removed and relaid. As to the irregularities of the floor in the entrance hall, he stated his attention was not directed to this complaint. He found the frame of the rear exit door out of plumb, the formica loose on the kitchen counter top, the cracked sheetrock in an upstairs bedroom, an abnormal movement of the brick veneer wall on a portion of the rear wall and a pulling away of the frame of the rear door from the brick, the pitting of the exterior concrete work, and the oversized holes in the sheetrock ceilings around the electrical fixtures.
Mr. Bankston considered the imperfections in the entrance hall tile and the loose formica on the kitchen counter top to be normal occurrences in the construction of a dwelling. He expressed no opinion as to the holes in the surface of the exterior concrete work. In all other complaints he agreed to their existence and considered them to be construction defects.
Mr. LeBlanc considered there was no defect in the entrance hall floor or the formica on the kitchen counter top, and he expressed doubt that there was a defect in the brick work. In addition to finding the additional defects set forth above, he agreed with the other witnesses that the other complaints represented construction defects.
During the construction of the subject residence the projection or overhang of the upper floor began to sag. The builder proposed to correct this condition by securing the projection with iron posts extending from beneath the projection to the ground. This change was discussed with the plaintiff and he agreed thereto. Subsequently, the builder replaced the iron posts with ornamental columns at the request of the plaintiff. The change in plans from an unsupported projection to the placement of columns was agreed to by the plaintiff. We find this constituted a waiver of the deviation. However, as a direct result of this sagging, the floor in the upstairs bedroom is uneven because of a heaving of the floor joists. There was a dispute among the experts as to the magnitude or seriousness of this defect. All agree it is present. We find plaintiff has established this to be severe enough to require correction.
We find the plaintiff has established by a preponderance of the evidence the existence of the conditions complained of and these conditions are construction defects caused by faulty work of the builder.
It is the position of the defendants the plaintiff is estopped to claim recompense for these defects for the reason he signed an acceptance of the work before he occupied the dwelling. It is the position of the plaintiff that the builder agreed, at the time, to correct any defects regardless of his acceptance. We believe the builder did assure the plaintiff of their willingness to correct any deficiencies that existed at the time the acceptance was executed. We find this to be true because a large portion of the defects, including the ones the plaintiff could have discovered prior to acceptance, were listed by the plaintiff to the builder and some effort made to correct the same. Estoppel is not applicable for the reason that many of the complaints developed after occupancy by the plaintiff and could not have *261 been discovered or determined to exist prior to that time.
Having determined that the defendants are liable to the plaintiff for the defective work performed in the construction of his residence, we will now consider the proof offered by the plaintiff of the cost of the necessary corrective and remedial work. The court appointed expert, Mr. Lamana, testified that he would not undertake the necessary work for less than a contract price of $13,000. He freely admitted that this was based on his inability to determine prior to undertaking the work exactly what would have to be done to correct the sagging of the overhanging upper story, as well as the unevenness of the floor of the second story. He admitted that this was a price that was padded to make sure he would not lose any money on the job. Mr. Coleman considered this price as unrealistic and considerably more than what he feels a reasonable price to be. He stated that he thought a price between $7,500 to $10,000 more in keeping with the amount of work to be performed. We do not feel either the price submitted by Mr. Lamana or the estimate of Mr. Coleman to be based on firm computation of the work to be undertaken.
It would be more desirable to us to find the evidence a firm competitive bid for the correction of these defects. Such is not present before us here. We find that Mr. Myatt considered the work should be performed for the sum of $241, however he was positive that his work load in the foreseeable future would not permit him to undertake the job. Mr. Bankston, assuring the court that he would not undertake the work under any condition, stated that all repairs could be performed for less than $200. Mr. LeBlanc testified the work could be done for $320.
We would be inclined to make a determination of a fair cost of this work from the available testimony were it not for the estimate of cost of deficiencies found by Mr. LeBlanc to be grossly in excess of his estimate of $320. On April 2, 1964, Mr. LeBlanc estimated the cost of correction to be $855.
In view of the wide divergency in these estimates of cost of corrective work, we believe that justice demand that we remand this matter for a determination of the cost of correcting the herein found construction defects.
For the foregoing reasons the judgment of the trial court is reversed and there is judgment herein in favor of the plaintiff decreeing the above set forth defects to be the fault of the builder, and this matter is remanded to the trial court for the purpose of determining the cost of correction of the said defects. Defendants to pay all costs.
Reversed and remanded.