LOTTINGER, Judge.
This is a suit filed by West Bank Steel Erectors Corporation, as petitioner, for the balance allegedly due under a subcontract with Charles Carter & Company, Inc., the general contractor, and the Roman Catholic Church of the Archdiocese of New Orleans, the owner, as defendants. The Lower Court rendered a judgment in favor of petitioner and against defendants, in solido, in the sum of $3,131.79. The defendants have appealed.
This suit arises as a result of an alleged balance due under a subcontract by West Bank Steel Erectors Corporation against Charles Carter & Company, Inc., as the general contractor, and the Roman Catholic Church of the Archdiocese of New Orleans, the owner of the construction, same being a building complex in the vicinity of Houma, Louisiana, formerly known as the Houma Catholic High School (Vande-bilt Catholic High School). Defendants answered, admitting that the full amount of the price under the subcontract had not *54 been paid because the subcontractor failed to install certain reinforcing steel properly, thus necessitating extensive remedial work to make the school building structurally sound. Charles Carter & Company, Inc. (hereinafter referred to as Carter) reconvened seeking damages against its subcontractor West Bank Steel Erectors Corporation (hereinafter referred to as West Bank), resulting from the latter’s failure to perform as required by the subcontract, including reasonable attorney fees as stipulated in the subcontract. West Bank answered the reconventional demand in the form of a general denial.
Following trial, the Lower Court took the matter under advisement, and, as shown by its written reasons for judgment, concluded that: (1) Carter failed to prove by a preponderance of the evidence that West Bank failed to install the reinforcing steel in a workmanlike manner and in accordance with the plans and specifications, and (2) Carter owed a duty to West Bank to obtain an inspection of West Bank’s reinforcing steel work by the architect’s consulting structural engineer. The Lower Court rendered judgment in favor of West Bank and against Carter and the Roman Catholic Church of the Archdiocese of New Orleans (hereinafter referred to as owner) in solido, in the net principal sum of $3,131.79, with legal interest and costs. The Lower Court further dismissed Carter’s reconventional demand. From this judgment, Carter and owner have perfected this, a suspensive appeal.
The evidence reflects that on August 12, 1964, Carter entered into a general contract with owner for the construction of the school situated near the City of Houma, in the Parish of Terrebonne, Louisiana. On the same day the subcontract was entered into by the contractor with West Bank under which West Bank was to install the reinforcing steel and reinforcing mesh for the construction of the said high school.
The evidence reflects that Building C was the first of the buildings to be erected, and no problem was encountered with the reinforcing steel placed in the beams and joists of the first floor of said building. Mr. Robert Froedge, representative of West Bank, took over the installation of the reinforcing steel on the second floor of Building C and installed the reinforcing steel only in the areas of the first and second concrete pours of the second floor of said building. After these two pours, the reinforcing steel work was performed by another representative on behalf of West Bank. It was in the area of both the first and second concrete pours of the second floor of Building C that the reinforcing steel was allegedly uniformly misplaced.
This misplacement was originally detected by Mr. Thomas A. Fromherz, the structural consulting engineer employed by the architect, who testified upon trial that when he examined the area of the second pour of the second floor of Building C, prior to the pouring of the concrete thereon, he noted the beam and joist reinforcing steel was not placed as required by the contract drawings and specifications. Because of the uniform misplacement of the steel in this area, Mr. Fromherz concluded that the beam and joist reinforcing steel had likewise been misplaced in the area of the first pour of the second floor of Building C in which area the concrete had already been poured. To verify this conclusion, he required that test holes be made in the concrete of the first pour in the areas where the reinforcing steel was supposed to have been placed, personally examined the numerous test holes and verified that his fears were correct and that the reinforcing steel had uniformly likewise been improperly installed and misplaced in this area.
In its reasons for judgment, the Lower Court said:
“There is no doubt that the reinforcing steel was not placed in the beams where the architects’ consulting engineers, wanted, or expected, it to be. The test holes, cut in the beams revealed, at least where the holes were cut, that the steel *55 was not where it was expected to be. However this court is not prepared to say that plaintiffs’ foreman, Froedge, did not properly read, and follow, the directions which appeared on the various sheets of prints and instructions for the setting of the steel.
Defendant and reconvenor introduced in evidence sheet 13 of Reconvenor Exhibit No. 1, purporting to show how the steel was to be set. (Tr. pp. IS, 16) In that connection, Froedge stated that he did not use that sheet (architect’s drawing) but rather the reinforcing steelprint sent out by the company that bonds (fabricates) the steel. He insisted that he set the steel correctly according to the cut sheets or shop drawings, ‘the prints I worked with.’ ”
The overwhelming weight of the evidence discloses that the laying of these steel beams was not in accordance with the plans and specifications supplied West Bank. Whether or not the installation was in a good and workmanlike manner is certainly subject to great doubt because of the testimony of the various engineers and representatives of the architectural firm that it was necessary to strengthen the defective beams by the use of steel plates and channel iron applied externally to them.
In Biedenharn v. Waters, 169 La. 1006, 126 So. S08, the Court held that a subcontractor cannot escape responsibility for failure to comply with the express provisions or plans or specifications merely by showing he performed in an average way or in a way suitable to other contractors.
We therefore feel that in the installation of these beams, West Bank was in violation of its contract with Carter, which was a usual and customary form of contract wherein the subcontractor undertook to perform certain labor and furnish certain materials for the erection, construction, and completion of the school as per plans and specifications prepared by the particular architect. By entering into the contract, the subcontractor obligated himself to perform in accordance with the said plans and specifications unless same were changed by the architect or some other responsible party.
With regard to the question of inspection a representative of the architect on the job testified that although there was no requirement in the contract that an inspection be made before the pour, it is better practice for the contractor to let the architect-engineer know. This is because there is a responsibility on the contractor to see that the job is performed in accordance with plans and specifications. Of course, there was also an obligation on the subcontractor to perform in accordance with the plans and specifications.
According to Mr. Porter, the construction superintendent for Carter, he was notified by West Bank’s foreman, Mr. Froedge, that his crew had finished the placing of the reinforcing steel in the forms into which the concrete was to be poured. Porter called upon Fromherz, the engineer for the architect, to make an inspection before Porter ordered the pouring of the concrete. The call to Fromherz was made either on December 29 or 30, 1964, and Porter was advised that the inspection could not be made on December 31, 1964 because his men couldn’t travel on that day. Mr. Fromherz testified that according to his recollection he told the contractor that if he wanted to pour he would have to do so at his own risk. Nevertheless, Carter on December 31, 1964, proceeded to order the concrete poured in the first pouring of the second floor, the pour which turned out to be over the misplaced beams and for which the corrective work was required.
Although Mr. Fromherz testified it was customary for the engineer to make an inspection before each and every pour, he stated that it was not mandatory.
Paragraph 2 of the subcontract provided:
“Subcontractor has read and is thoroughly familiar with the said contract documents and agrees to be bound to contractor by the terms of said contract *56 documents insofar as they relate in any part or in any way to the work undertaken herein, and to assume towards contractor, in connection with the work covered by this subcontract, all of the obligations and responsibilities which contractor by these documents assumes towards the owner or anyone else.”
Paragraph 6 of the subcontract further provides:
“Subcontractor shall provide sufficient space and proper facilities at all times for the inspection of the work by the contractor, the architect and their authorized representatives, and shall, within twenty-four (24) hours after receiving written notice from contractor to that effect, proceed to take down all portions of the work and remove from the grounds and buildings all material, whether worked or unworked, which the architect shall condemn as unsound or improper or as failing to conform in any way to the contract documents, and shall make good all such work condemned and other work damaged or destroyed in removing or making good such condemned work. However, subcontractor shall not remove any other material from the building site without contractor’s written permission.”
The Lower Court held that under the provisions of the above quoted section 6 of the subcontract, there was an obligation on the contractor to have the architect or engineer inspect the work prior to the pouring in question in this suit. Accordingly, the Lower Court held that the obligation for the inspection was on the contractor and that, therefore, the contractor was at fault in not seeing that said inspection was made prior to the pour.
We do not agree with this holding by the Lower Court. The evidence reflects that there was no clerk of the works on this particular job. The subcontract itself clearly places the obligation upon the subcontractor to see that the work is done in accordance with the plans and specifications. There is no obligation therein imposed upon the contractor to require an inspection prior to acceptance of the work of the subcontractor. Paragraph 6 of the contract merely provides for space and facilities required for the making of inspections and does not obligate the contractor to make inspections, or to see that inspections are made.
The evidence discloses that there was no obligation in the contract by which Carter owed West Bank a duty to obtain an inspection from an architect or the consulting engineer. The structural engineer owes duties to his principal, the architect, who in turn owes duties to his principal, the owner. Any inspections by the architect or structural engineer are solely for the protection of the owner. Even if such inspections are not undertaken, the general contractor cannot escape liability for breach of contract on the basis of a failure on the part of the architect or his consulting engineer to inspect. The general contractor is expressly obligated to erect the improvement in accordance with the plans and specifications. Where the general contractor subcontracts part of the work, the subcontractor is likewise directly responsible to the general contractor and is required to perform the work subcontracted in accordance with the plans and specifications, without being able to escape liability on the grounds of the failure of the architect or his consulting engineer to inspect on behalf of the owner.
Although the Lower Court indicated in its reasons for judgment that the instructural sheet, which it called sheet 13, had nothing to do with the reinforcement of beams and joists in the building, sheet “S-13”, which is included and filed in the record of this proceeding is the sheet dealing with the reinforcement of beams and joists in the building with which West Bank should have complied. Instead, Mr. Froedge, West Bank’s man on the job, stated that he did not use that sheet but rather the reinforcing steel print sent out *57 by the company that bends the steel. He insisted that he set the steel correctly to the cut sheet or shop drawings, “the prints I worked with”. This clearly indicates that Mr. Froedge did not set the steel in accordance with the plans and specifications which were made a part of the subcontract but rather with drawings made by other parties. The testimony of defendants’ experts, particularly Mr. Fromherz, the structural engineer on the job, was to the effect that petitioner did not perform in accordance with the contract documents. As the evidence clearly reflects that the work performed by the subcontractor in the first pouring on the second floor was not in accordance with the plans and specifications, we feel that the provisions of article 2769 of the La. Civil Code control, which said article provides:
“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in a manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may in-sue from his non-compliance with his contract.”
 The defendants, in reconvention, claim that they sustained damages as a result of the faulty work by the petitioner in the sum of $4,503.26, which is substantiated by exhibits filed in the records of this proceeding. In addition thereto, they claim that they are entitled to an award of reasonable attorney fees in the sum of $2,500.00. Paragraph 21 of the contract entered into between West Bank and Carter provides for the payment by the subcontractor for all reasonable costs, charges, expenses and attorney fees expended to enforce any of the provisions of the said contract, or to protect the contractor’s interest in any matter arising under this contract, or to collect damages for the breach thereof. There was submitted into evidence, over no objection by petitioner’s counsel, a memorandum relative to attorney fees and signed by the attorney for defendants showing the 31 hours spent in review, conferences and certain works preparatory to trial at an hourly rate of $35.00, or for the sum of $1,085.00. This did not include the two-day trial and the appeal of this matter.
We feel that reasonable attorney fees herein would be the sum of $2,000.00.
Paragraph 9 of the subcontract provides as follows:
“9. Should Subcontractor at any time refuse or negect to supply a sufficient number of propertly (sic) qualified workmen or a sufficient quantity of materials of the proper quality, or abandon the work or fail in any respect to prosecute the work covered by this contract with promptness and diligence or fail in the performance of any of the agreements herein contained, contractor may, at its option, after forty-eight (48) hours’ notice to Subcontractor, provide any such labor and materials and deduct the cost thereof from any mony then due or thereafter to become due to Subcontractor under this contract or otherwise; or Contractor may, at its option, terminate this contract and for the purpose of completing the work covered by this contract, Contractor shall have the right to take possession of all the materials, tools and appliances belonging to Subcontractor at the site of the work, and Contractor may either complete said work itself or may employ, or contract with, any other person or persons to complete the work and provide the materials therefor; and in case of such termination of this contract, Subcontractor shall not be entitled to receive any further payment under this contract until said work shall have been finished completely and payment therefor made by Owner, at which time if the unpaid portion of the amount to be paid under this contract exceeds the charges, expenses and damages sustained by the Contractor in completing the work or as a result of such default, such excess shall be paid by Contractor to Subcontractor, but if such charges, expenses and damages shall exceed said *58 unpaid portion, Subcontractor shall pay the difference to Contractor.” (Emphasis added)
Therefore, petitioner is entitled to a credit of $3,131.79 same being the balance due under its subcontract with defendant.
For the reasons hereinabove assigned, the judgment of the Lower Court will be reversed, and there will be judgment entered herein in favor of defendants and against petitioners dismissing petitioner’s demand, and in favor of defendant plaintiff, in reconvention, and against the defendant in reconvention awarding petitioner in the reconventional demand the sum of $6,503.26, consisting of $4,503.26 as damages and $2,000.00 as attorney fees less a credit of $3,131.79, together with legal interest from judicial demand until paid, and all costs of Court shall be paid by petitioner.
Judgment reversed and rendered.