308 So.2d 495 (1975)
CHARLES C. CLOY, GENERAL CONTRACTORS, INC.
v.
DIVINCENTI BROTHERS, INC.
No. 10039.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied February 10, 1975.
Writ Refused April 24, 1975.
*496 Gordon A. Pugh and F. Charles McMains, Jr., Baton Rouge, for appellant.
W. P. Wray, Jr., Baton Rouge, for plaintiff-appellee.
Emile M. Weber, Baton Rouge, for appellee Wm. L. Bowman.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
NEHRBASS, Judge.
Plaintiff, Charles C. Cloy, General Contractors, Inc. (Cloy), instituted this action against defendant, DiVincenti Brothers, Inc. (DiVincenti), to recover a $3,674.10 retainage due on a bonded building contract wherein Cloy agreed to construct a warehouse for DiVincenti for a price of $36,741.00. DiVincenti reconvened seeking damages for defects resulting from alleged improper workmanship or improper execution of the contract. DiVincenti also filed a Third Party Complaint against William L. Bowman, the project engineer, alleging alternatively that the defects complained of were caused by improper plans and specifications. Bowman reconvened against DiVincenti seeking damages for defamation and this action was dismissed on an exception of no cause of action filed by DiVincenti.
The trial court rendered judgment on the principal demand in favor of Cloy for the sum of $3,674.10 and against DiVincenti dismissing its reconventional demand against Cloy and its Third Party Demand against Bowman. Defendant, DiVincenti, has perfected this devolutive appeal from the final judgment on the principal demand and on its reconventional demand against Cloy. That portion of the judgment dismissing *497 the Third Party Demand has not been appealed, nor have Cloy and Bowman appealed.
No contested issues of law are present in the main demand. As a general rule, a party suing to recover on a commutative contract must allege and prove performance of his agreement. L.S.A.-C.C. Article 1913. However, the jurisprudence of this state is settled to the effect that upon substantial completion of a work the contractor is entitled to the value thereof as constructed; the remedy of the owner in the event of defect or imperfections therein, being the right to seek a diminution in the price to the extent of the loss or damage sustained by virtue of the contractors failure to perform the work as agreed. Justiss-Mears Oil Company v. Pennington, 132 So.2d 700 (La.App. 1st Cir. 1961); Jack v. Henry, 128 So.2d 62 (La.App. 1st Cir. 1961).
We agree with the trial judge that the facts set forth and established in the pre-trial order are sufficient to support a judgment on the main demand in favor of Cloy and against DiVincenti for the sum of $3,674.10. Plaintiff has sufficiently documented the facts with exhibits filed on the trial.
DiVincenti maintains that the trial court was in error in dismissing the reconventional demand for damages for defects resulting from improper workmanship or improper execution of the contract. In this vein, defendant maintained that the trial court was in error in holding that the signing of a formal and unqualified acceptance by the defendant operated as a waiver barring the owner from recovering damages for patent and easily discoverable defects.
On August 4, 1971, Cloy and DiVincenti entered into a building contract wherein Cloy agreed to construct a warehouse immediately south of and adjacent to an existing building owned by defendant. What was formerly the outside south wall of the old building has become the inside wall between the old and the new building, and what was formerly an outside door on the old building has become a door or passageway connecting the two buildings.
During construction, DiVincenti noticed certain clearly obvious defects which he urges as the basis of his reconventional demand for damages. His two principal complaints are that the elevation of the floor in the new building is two (2) inches higher than the floor in the old building, and that the loading and unloading ramps at the outside doors of the new building are too steep to be safely used by a lift truck. The difference in the floor elevation and the steepness of the loading ramps are alleged to cause a loss of work time in loading and unloading operations. He also alleges that the concrete floor is cracked in many places but no evidence was presented on this matter and the trial judge who observed the building noted that the minor cracks that were present did not amount to a defect.
DiVincenti also urges that certain downspouts located on the interior wall between the old and new building which served the purpose of roof drainage and which discharged into piping located beneath the slab, are not constructed in accordance with plans and specifications. These downspouts are not constructed flush against the interior wall, but are slightly offset causing some loss of floor space. It is also alleged that these interior downspouts leak during heavy rains. He also alleges that the exterior gutters are not of sufficient size to take care of drainage from the roof in heavy rain.
All of the defects of which the owner complains are clearly obvious on casual inspection. The owner testified that he noticed all of these defects and registered his complaints with Cloy's representatives on the job and with Cloy himself. In response to these complaints, and at the request of the owner, Cloy poured a small ramp inside the old building to correct the difference in floor elevation and fixed the *498 leaks in the interior downspouts. On cross-examination the owner admitted that these corrective steps were taken during the final stage of construction, and Cloy testified that construction was still in progress at that time. No further complaints were registered subsequent to the taking of these corrective measures. We believe that these corrective measures were taken prior to the acceptance of the building on November 11, 1971.
An acceptance of the building as being complete was signed by the owner on November 11, 1971, and this notice of acceptance was recorded. The owner testified that he occupied the new building on that date. On the same date, the owner made a payment to Cloy in the sum of $26,216.90 which brought the total sum paid to ninety percent (90%) of the contract price. No complaints were registered by the owner at this time, nor did he retain any additional sums for incomplete work as he had the right to do under the contract. On December 27, 1971, a certificate disclosing that no labor or material liens had been filed was issued by the East Baton Rouge Parish Clerk of Court. This certificate was subsequently presented to the owner and demand was made for the ten percent (10%) retainage due under the contract.
Defendant in reconvention, Cloy, contends that DiVincenti is precluded for recovering for defects that were known to him or which were apparent at the time he signed the affidavit of acceptance, relying on the legal principles set forth in Maloney v. Oak Builders, Inc., 224 So.2d 161 (La. App. 4th Cir. 1969) modified 256 La. 85, 235 So.2d 386 (1970):
"It is also well settled that even if the owner proves the existence of the defects or omissions and the cost of repairing them, he is nevertheless barred from recovering the cost thereof if he accepted the work despite the patent defects or imperfections discoverable upon reasonable inspection. Acceptance, however does not bar the owner from recovering for defects not readily discoverable by ordinary inspection, or for defects which manifest themselves subsequent to the acceptance, or for defects which are explicitly excluded from the terms of the acceptance."
DiVincenti strongly urges that there has been no waiver of his rights to seek damages for defects and omissions as there was an understanding that Cloy would correct all defects. It is well established that acceptance with the understanding that certain defects will be remedied does not bar recovery for the cost of remedying such defects. Breaux v. Laird, 230 La. 221, 88 So.2d 33 (1956); Costanza v. Cannata, 214 La. 29, 36 So.2d 627 (1948); Palmer v. Asaff, 297 So.2d 487 (La.App. 2d Cir. 1974); Maloney v. Oak Builders, Inc., 224 So.2d 161 (La.App. 4th Cir. 1969); Rathe v. Maher, 184 So.2d 256 (La. App., 1st Cir. 1966); Jack v. Henry, 128 So.2d 62 (La.App. 1st Cir. 1961). In all of these cases there was a definite understanding or agreement between the owner and the contractor that the defects complained of would be corrected or the work completed regardless of the acceptance; and in the majority of cases, the contractor had attempted to make corrections subsequent to the acceptance.
In the instant case the record contains no evidence of any understanding or agreement that Cloy would correct any of this work. The record does contain evidence that DiVincenti had knowledge of the full extent of the damages, that he registered his complaints during construction and that corrective measures were taken during construction at his request. No further complaints were made and subsequent to occupation of the building Divincenti signed an unqualified acceptance of the work as complete. We believe as did the trial court that the owner waived all defects of which he had knowledge or which were easily discoverable on simple inspection.
*499 Appellant urges that the effect of the acceptance should be limited to commencement of the delay in which labor and materialmen's liens may be filed under L. S.A.-R.S. 9:4801 et seq. We did not agree and can not see any reason why such an acceptance may not serve a dual purpose under the circumstances of this case. However, we believe the effect of such an acceptance may be so limited where it is found that there was an understanding and agreement that it should be so limited. See Costanza v. Connata, supra; Palmer v. Asaff, supra; Rathe v. Maher, supra.
For the foregoing reasons the judgment of the trial court is affirmed, and all costs of these proceedings are to be paid by appellant, DiVincenti Brothers, Inc.
Affirmed.