LOBRANO, Judge.
This lawsuit involves an underground plumbing failure at the Quality Inn Motel located on Williams Boulevard in Kenner, La. The motel was built in 1973. The plumbing failure was discovered in 1982.
Plaintiff, Eastover Corporation (East-over), owner of the building, sued to recover its costs in repairing the system. The original owner of the building, Louisiana Motor Inns (LMI), a partnership in com-mendum, transferred ownership to East-over by Dation en paiement on November 16, 1979.[1] Jacob Senter and S. Stewart Famet were the general partners of LMI.
Eastover sued the general contractor, Martin Builders, Inc. (Martin), the project’s architect, S. Stewart Famet, the plumbing subcontractor, Mechanical Construction Company (Mechanical), the mechanical and electrical consultants hired by Famet, Lucien T. Vivien, Jr. and Associates, Inc. (Vi-vien), and the electrical subcontractor, Frischhertz Electrical Company (Frisch-hertz). Eastover did not sue LMI, or its general partners.
Each of the defendants filed incidental demands against each other basically claiming full indemnification and/or contribution. They also filed exceptions of no right/and no cause of action. The district court referred the entire matter to a commissioner. The exceptions were referred to the merits.
The entire matter was tried in January 1986. The commissioner recommended that Eastover was estopped from bringing the action since its ancestor in title, LMI, had knowledge of the defect when the building was accepted. Alternatively, he recommended that should plaintiff prevail, the award be set at $29,834.35 rather than $80,061.77, the actual repair bill.
Eastover excepted to the commissioner’s recommendations, and the trial court remanded the matter back to the commissioner for further clarification and explanation. The subsequent commissioner’s report found the plumbing to be defective; however, he again recommended dismissal of Eastover’s suit for the reasons cited in his original recommendation.
On December 8, 1987 the trial comí rendered judgment against all defendants, except Frischhertz, jointly and in solido in the sum of $79,381.14, plus interest and costs. Martin recovered against Mechanical on its third party demand based on the indemnity agreement in the contract. All other incidental demands were dismissed.
The trial court concluded that there was an insufficient number of pipe hangers to support the underground plumbing and that the spacing of those hangers did not conform to the Jefferson Parish Building Code. Specifically, the court found that the hangers were actually placed ten feet apart, whereas the code required a five foot spacing. This defect was found to be the cause of the collapse of the underground sewer piping, and fault was attributed to all defendants. Famet and Vi-vien's responsibility was their failure to properly inspect and design the system to provide adequate supports. Martin and Mechanical’s responsibility was based on a contractor’s general warranty of workmanship under Civil Code Article 2762.
*1360 All defendants now perfect this appeal. Each assert the following errors:
a) Eastover, as LMI’s transferee, is es-topped from pursuing this claim because LMI knew or should have known of the defect when the project was accepted;
b) The cause of the plumbing failure was not the improper spacing of the pipe hangers, but the corrosive nature of the soil which caused the galvanized hangers to corrode.
c) The damages awarded are excessive.
Specifically each defendant asserts that he was not negligent or at fault in the sewer collapse, and that if there is any fault, it should be borne by the other defendants.
CAUSE OF THE PLUMBING COLLAPSE
Serious argument is made by all defendants that the cause of the sewer collapse was the corrosion of the pipe hangers, rather than their improper spacing. There is evidence to support this argument, but after review of the entire record we cannot say the trial judge was clearly wrong in his causation finding. Our review shows the following.
In January of 1982, James Allman, the hotel manager observed water and other materials oozing from underneath the slab. He called B & B Plumbing to investigate the problem. B & B worked on a cost-plus arrangement and began excavating, pumping and repairing the system. The excavation was done at the rear of the building near the seeping water.
The plumbers worked for sixteen weeks. Allman witnessed the work in progress and inspected the repairs as they were completed. He testified that the pipes were running like a roller coaster underground; that some of the hangers were good, others were bad and corroded and some were broken off the slab completely.
Jack Breitenbach of B & B Plumbing supervised and participated in the repairs. He estimated that there was six to eight inches of soil settlement under the slab. He noted that some of the pipe hangers were corroded, some were broken off in the slab and some were not connected. Pipe under the kitchen and bathroom areas was broken. Raw sewerage and large amounts of soapy water were being discharged directly into the soil. He testified that the repair work consisted of adding additional hangers and placing them at every hub and fitting. Broken pipe was replaced, and hangers were placed every ten feet when ten foot pipe lengths were used.
Lloyd Kuhn, a senior mechanical engineer for W.S. Nelson, Inc. was qualified as an expert by Eastover. Although he did not observe the repair work in progress, he did examine the site after the repairs were made. He opined that the cause of the plumbing failure was the lack of sufficient pipe hangers to support the underground system. Although he had never designed or constructed an underground system, he was satisfied that the insufficiency and improper placement of the hangers caused the pipes to collapse under the added weight of the sewerage discharge. He also opined that the completed repair work was still in violation of the building code because some of the hangers were spaced in excess of five feet.
The hotel was completed in 1973. At the time of construction Ike Mancuso was the chief plumbing inspector for the City of Kenner. He testified that he inspected and approved the plumbing system. He asserted there were no building code violations. Even though he was aware that the code required hangers every five feet, he testified that the code was interpreted to mean placing a hanger at every hub and fitting. Because for a certain period of time before 1960 cast iron soil pipe only came in five foot lengths, the code required five foot spacing. He also testified that in the 1980’s galvanized hangers were found to be insufficient because of corrosion and that the code now requires stainless steel.
The owner of the building, LMI, contracted with one of its general partners, Famet, to prepare the plans and specification and supervise construction. Famet contracted with Vivien to design, among other things, the plumbing system, and to generally carry out Famet’s responsibilities. Famet testified that although he visited the construction site only two or three times, he *1361 employed Anthony Lauto as his field inspector. Farnet stated that, as general partner of LMI, he accepted the building as complete with no exceptions made. He never received any notice from Lauto or Vivien of any plumbing defect. The building passed all inspections. Although Lauto did not testify, his extensive field notes were introduced in evidence. They indicate that he was constantly present during all phases of construction.
Lucien Vivien confirmed Famet’s testimony. The building conformed to all code requirements, and no plumbing deficiency was ever noted. Russel Cole, an on-site inspector for Vivien, testified he was not able to inspect the entire system because part of the slab was poured prior to his arrival on the job. However, there were no deficiencies noted on those portions he did inspect.
Mechanical’s project manager for this particular job, Martin Vollenweider, testified that, although the system was designed by Vivien, the placement of hangers was the responsibility of the man in the field. He confirmed Mancuso’s testimony that the building code was written in the 1950’s and required hangers every five feet because pipe only came in five foot lengths. He also estimated that the repair work should have been approximately $29,000.00 instead of nearly $80,000.00.
Although the evidence is balanced on the causation issue, we cannot say that the trial court was clearly wrong in finding a defect in the number and spacing of the pipe hangers; and that the defect was the cause of the plumbing failure. It is clear that the code required five foot spacing and the evidence indicates actual spacing at varying intervals.
We do find error, however, in the conclusion that Eastover, as LMI’s transferee, is not estopped from bringing this action. On this issue, we reverse.
ESTOPPEL
The trial court stated in its reasons: “Although the Commissioner may have been correct that Farnet knew or should have known of the defects in his role as architect because they would have been discoverable on reasonable inspection before the slab was poured, LMI could not have been expected to discover the defects.”
The factual conclusions are correct. The legal conclusion that Farnet’s knowledge of the defects was not imputed to LMI is incorrect.
“It is well settled that where an owner proves the existence of defects or omissions and the cost of repairing them, he is nevertheless barred from recovering these costs if he accepted the work despite the patent defects or imperfections discoverable upon reasonable inspection.” State v. Wilco Const. Co., Inc., 393 So.2d 885, 897 (La.App. 4th Cir.), writ denied 400 So.2d 905 (La.1981). Accepting work without complaint about the manner or quality of performance serves as an estoppel to subsequent recovery by the owner for defective workmanship. Brouillette v. Consolidated Const. Co., 422 So.2d 176 (La.App. 1st Cir.1982); Cloy v. Divincenti Bros., Inc., 308 So.2d 495 (La.App. 1st Cir.), writ denied 311 So.2d 262 (La.1975).
The claim made by Eastover is one of implied warranty pursuant to Civil Code Article 2762 and 2769. And, as LMI’s transferee, Eastover is subrogated to all implied warranty claims which LMI had. Aizpurua v. Crane Pool Company, Inc., 449 So.2d 471 (La.1984); Degeneres v. Burgess, 486 So.2d 769 (La.App. 1st Cir.1986). It is axiomatic, however, that only those non-waived warranty rights are acquired by the purchaser. Id. The issue is whether LMI, when it accepted the building without complaint, knew or should have known of the defect and thus waived any claim it had.
LMI is a partnership in commendam. Farnet, as a general partner, has the same rights, powers and obligations of a partner as defined in the general articles on partnership. La.C.C. Art. 2837. And, as general partner, he had the authority to accept the substantial completion of the project on behalf of the partnership. The trial court, however, made a distinction between Far-net, the architect and Farnet, the owner, at *1362 the time he accepted the project. The court, citing Article 2814, held that the “architect’s” knowledge was not the “owner’s” knowledge, and therefore any observations by the architect or his agents were not observations by the owner. Hence, the court concluded that LMI (and its transferee, Eastover) was not precluded from bringing this warranty action. We disagree.
Famet was hired by LMI to prepare the plans and specifications, administer construction of the work, and inspect the completed job. Famet contracted with Vi-vien to assume most of those responsibilities. He also had a field representative (Lauto) at the job site throughout the construction. The evidence is clear that either Vivien or Lauto or both visually observed the number and spacing of the pipe hangers. The work was approved by Kenner’s chief inspector and no one voiced objection or complaint about the underground plumbing system. If Famet did not have actual knowledge of the hanger placement, he should have since his agents and representatives did. The placement of the hangers was easily observable. At the time of the plumbing inspection, the “defective” hanger placement was clearly a patent defect and not a latent one. The trial court and the commissioner both agreed that Famet knew or should have known of the improper placements. This is a correct factual conclusion.
However, we find no basis to support the legal conclusion that the knowledge of Famet, the architect, is not the knowledge of Famet, the owner. The trial court’s reliance on Civil Code Article 2814 is erroneous. That article provides:
“A partner is a mandatary of the partnership for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables. A provision that a partner is not a mandatary does not affect third persons who in good faith transact business with the partner. Except as provided in the articles of partnership, any person authorized to execute a mortgage on behalf of a partnership shall, for purposes of executory process, have authority to execute a confession of judgment in the act of mortgage without execution of the articles of partnership by authentic act.
The article’s intent is to protect third parties who deal with a partner in the ordinary course of the partnership business. The partner is a statutory mandate of the partnership, and his actions will bind the partnership. A third party is relieved of the necessity of obtaining partnership authority when dealing with one its partners in the ordinary course of partnership business.[2] Thus, when the trial court reasoned that the phrase “in the ordinary course of business”, meant that knowledge obtained by Famet was not the knowledge of LMI because LMI was not in the architectural business, that reasoning was a misapplication of Article 2814. That phrase is the determining factor which binds the partnership because of the individual partners’ actions. It has nothing to do with knowledge acquired by a general partner and the partnership.
Common sense necessitates the conclusion that knowledge obtained by Famet, or knowledge which he should have obtained, whether as an architect or layman is knowledge by LMI, the owner. Famet is a general partner of LMI. He cannot operate one eye as an architect and one as an owner. Whatever both eyes observe, or should observe is transmitted to one person, Famet. He knew or should have known, hence LMI knew or should have known.
Eastover argues that the failure of Far-net to reject Mechanical’s work does not preclude their suit. In support thereof they cite Town of Winnsboro v. Barnard, & Burk, Inc., 295 So.2d 445 (La.1974) and West Bank Steel Erectors Corporation v. Charles Carter & Co., 248 So.2d 52 (La.App. 1st Cir.1971). Those cases support *1363 the principle that an architect s neglect in failing to inspect and/or supervise does not relieve a contractor from liability to the owner. We agree with that principle. However, the claim of estoppel in this case is supported by Famet’s failure to object to that which he knew or should have known when he accepted the job as owner, not by any neglect on his part to inspect the job. Since he is both owner and architect, the cited cases are not applicable.
The evidence is clear that the defective spacing of the pipe hangers was easily observable during construction. And Far-net, individually, and through his field representative or through his agent, Vivien, was aware or should have been aware of this defect. There was no complaint registered by the owner. It would be unfair to allow them or their transferee to now complain about something they were aware of and approved.
For the above and foregoing reasons we reverse the trial court judgment and dismiss Eastover’s suit at its costs.
REVERSED AND RENDERED.

. Eastover, formerly First Commerce Realty Investors, had provided the financing for construction of the motel.

. Excepted from this statutory mandate are matters dealing with the leasing, alienation or encumbrance of immovables.