For the reasons assigned the judgment appealed from is affirmed.

On Application for Rehearing

PER CURIAM.

 In application for a rehearing defendant complains, among other things, that this Court erred in its reason for refusing to consider paving costs as an element of damage, pointing out that the instant case is not covered by the rule cited in 29 C.J.S. Eminent Domain § 145, p. 991, because the Court admits that the contemplated improvement would not enhance the market value of defendant's property. Defendant may be correct in urging the inapplicability of the quoted rule to the case at bar. However, our refusal to consider the paving costs as damages is nevertheless proper, since the Constitution and statutes of this state provide that municipalities, in constructing or improving streets situated within its limits, can levy an assessment on the real property abutting the improvement as a means of paying for it, without any regard being given to the benefit or detriment which the contemplated improvement will cause the property. La.Const. of 1921, Art. 1, Sec. 2; Art. 10, Sec. 13; R.S. 33:3301. The fact that part of the street improvement is to be situated on land expropriated from defendant does not put him in any better position to receive a return of his assessment than a landowner whose land merely abuts the improvement without any of it having been taken.

The application for a rehearing is refused.

121 So.2d 510

John R. HUGHES

v.

Ervin B. BREAZEALE and William S. Good, Jr.

No. 44170.

May 31, 1960.

Rehearing Denied June 29, 1960.

Lucien J. Fourcade, New Orleans, for appellants.

Cabral & Cabral, Harry R. Cabral, Jr., New Orleans, for plaintiff-appellee.

SIMON, Justice.

Plaintiff, John R. Hughes, alleging himself to be the holder and owner before maturity and for value of a certain promissory note executed by defendants, Ervin B. Breazeale and William S. Good, Jr., to secure the completion of offsite improvements for Lots 19 and 20, Bonita Subdivision, belonging to plaintiff, instituted this suit seeking judgment for the face value of the note with accrued interest and attorney's fees. Defendants admitted its execution and the purpose to be served thereby, but denied liability thereon, alleging that their failure to have completed the improvements for which they so obligated themselves was due to their inability to obtain the approval and authority of the City Planning Commission and the Sewerage and Water Board of New Orleans, the approval of both city agencies in newly opened subdivisions being a condition precedent to the undertaking of the work; that this approval and authority is still unobtainable, and, as a consequence thereby,

despite their continued efforts, the suit is premature. In the alternative, and only in the event the court should hold defendants liable for the payment of the note, defendants prayed for judgment releasing and relieving them from the obligation of furnishing and installing the offsite improvements.

The district court rendered judgment in favor of plaintiff on the promissory note sued on, and in favor of defendants sustaining their alternative prayer. Defendants appealed from that portion of the judgment condemning them to pay the amount sued on.

The record reveals that on August 29, 1955, plaintiff offered to sell and defendants agreed to buy a certain tract of land measuring 100 feet in width by a depth of 2,000 feet for the stipulated sum of $21,000, the act of sale to be executed "Upon approval by the City of New Orleans of proposed Subdivision." On October 13, 1955, a plan of subdivision for this property was made by Adloe Orr, Surveyor, and submitted to the City Planning Commission of New Orleans for approval. On December 6, 1955, a tentative approval of the plan was signed by Louis C. Bisso, Secretary-Director of the Commission. Relying upon this tentative approval, defendants, on January 6, 1956, accepted title to the tract and contemporaneously reconveyed to plaintiff two lots designated as Nos. 19 and 20, Square 3, Bonita Park subdivision, on the aforementioned Orr plan, said lots forming part of the larger tract. The act of sale reconveying lots Nos. 19 and 20 contained the following provision:

"Transferors [defendants] further obligate themselves to furnish, at their expense, all off-site improvements in so far as the above described lots are concerned, including sub-surface drainage, sewerage, concrete streets, curb gutter bottoms, sidewalks, gas, water and electricity, as required by the City of New Orleans Planning and Zoning Commission, all at the expense of vendors [defendants], *which improvements will be completed within six months from this date.*" (Italics ours.)

The stated consideration of this reconveyance was a reduction, namely the value of the two lots, in the price to be paid in the sale of the larger tract. It also appears that on plaintiff's insistence of security as an assurance that the offsite improvements would be made within the six-month period, defendants thereupon executed the note sued on, however reserving to defendants the right to extend its maturity date an additional three months. The note provided for six percent interest per annum from maturity until paid and, in the event of default, attorney's fees in the amount of twenty-five percent of the principal, and interest. On the reverse of the note the following notation appears:

"This note is to secure the completion of offsite improvements in accordance with plan of Adloe Orr dated Oct 13/55 and is cancellable when the offsite improvements are completed.

"/s/ E. B. Breazeale
"/s/ W. S. Good, Jr."

It is significant that the notation is totally silent to the effect that the construction of these improvements would be conditioned upon the approval by the City of New Orleans of the proposed offsite improvements of the two lots in question.

The testimony of Mr. Bisso shows that for a developer of a subdivision to receive final approval of his plan from the City Planning Commission, the Commission must obtain an estimate of the street improvements from the Street Department of the City, an estimate of the cost of the drainage, sewerage and water improvements from the Sewerage and Water Board of the City, and a bond from the subdivider to cover the costs involved. Despite the tentative approval of defendants' subdivision by the City Planning Commission, final approval was not forthcoming within the time limit expressly imposed in both the act of sale and note, the Sewerage and Water Board having ruled that the existing sewerage facilities in the area were inadequate and not of sufficient depth to permit the extension of sewerage into the proposed subdivision. Thus, as a result of the disapproval of the city authorities, defendants were unable to furnish the offsite improvements to plaintiff's property, an obligation to be performed no later than October 6, 1956.

It may be stated that on April 16, 1958, the date of the trial below, the position taken by the Sewerage and Water Board, as aforestated, remained unchanged.

Although plaintiff prayed for enforcement of the promissory note, in answer to the appeal, he also demands specific performance by defendants of their obligation to construct the offsite improvements, contending that defendants having failed to provide in the act of sale and the note that the furnishing of the offsite improvements was contingent upon the City's approval, they are bound to fulfill the primary obligation to which they unconditionally bound themselves.

On the other hand, defendants contend that the note was in legal contemplation, no more than a penal clause as defined by LSA–C.C. Article 2117, which penalty was not enforceable under the provisions of LSA–Civil Code Article 2120, the City's refusal to permit them to install the offsite improvements being an irresistible force or vis major; that should we view it in a different light, plaintiff's right to insist on both the penalty and the specific performance of the primary obligation violates the provisions of LSA–Civil Code Articles 2124 and 2125 hereinafter quoted.

In determining the rights and liabilities of the parties hereto, we are confronted with the law of obligations containing penal clauses as are dealt with in Articles 2117 et seq. of our LSA–Civil Code. Article 2117 defines the penal clause as a secondary obligation "entered into for the purpose of enforcing the performance of a primary obligation." It envisages two distinct contracts, one to do or to give, which forms the principal object, and the other to give or do something if the principal object is not effectuated. Article 2118. Since the penalty is stipulated to enforce the principal obligation, it is not incurred if there be a lawful excuse for the non-performance of the principal agreement, such as inevitable accident, or irresistible force. Article 2120. The creditor may, of course, sue for the execution of the principal obligation instead of exacting the penalty. Article 2124. "The penal clause is the compensation for the damages which the creditor sustains by the non-execution of the principal obligation. He can not demand the principal and the penalty together, unless the latter be stipulated for the mere delay." Article 2125.

The record unmistakably reveals that the sole and only purpose of the note was the securing of defendants' good faith in proceeding with the offsite improvements and was, in effect, a secondary obligation entered into for the purpose of enforcing the performance of the primary obligation of

installing the offsite improvements. Obviously it was an obligation imposed as a penal clause as defined by Article 2117, supra. The record also conclusively shows that defendants were prevented from performing their primary obligation by virtue of the unfavorable action taken by the agencies of the City, as heretofore shown.

Posed for our determination, first, is the question of whether the unfavorable action of the municipal authorities constitutes a lawful excuse, such as a vis major or irresistible force, under Article 2120, supra, thereby preventing plaintiff from enforcing the penalty sought to be imposed.

The defendants, experienced subdivision developers, voluntarily bound themselves to complete the offsite improvements within a six-month period. Obviously, they held themselves out as being in a position to unconditionally construct and deliver these works within the stated period, without any reservation or any expressed foreseeable contingency, with a stipulated penalty represented by the note sued.

The happening of a "fortuitous event," an "irresistible force," or an "inevitable accident" which, under LSA–Civil Code Article 2120, relieves the debtor from incurring the penalty, where there is a non-performance of the principal obligation within the fixed period of time, means "such an interposition of human agency as is, from its nature and power, absolutely

uncontrollable. See Bouvier, verbo 'Casualty.'" Cook & Laurie Contracting Co. v. Denis, 124 La. 161, 49 So. 1014, 1015. These phrases are also held to be equivalent with the terms "Act of God" accidents which are irresistible; an act which cannot be resisted; an unforeseen occurrence, not caused by either of the parties, nor such as they could prevent; an accident which human prudence can neither foresee nor prevent. Words and Phrases, Vol. 22A p. 502; also Vol. 17, p. 634; Black's Law Dictionary, 3rd Ed., p. 807. See Farnsworth v. Sewerage & Water Board of New Orleans, 173 La. 1105, 139 So. 638.

■ In the case at bar, the defendants' failure to complete the works to which they bound themselves during the time agreed upon constituted a total breach of their obligation. In executing the penalty note they unconditionally bound themselves to fully comply with their primary obligation of constructing these works without reservation of any nature whatever. As experienced developers they undoubtedly knew and foresaw the possible rejection by the city agencies of these proposed improvements. Possessed with such knowledge they failed to insert a reservation or contingency which would have thus released them from any penalty in the event of negative action by the City. They must thus be held to have waived any possibility of release from the penalty charge voluntarily assumed by them. It is significant that defendants contemplated the likelihood of rejection by the City, for, as evidence of that fact, in the agreement to purchase the larger tract they caused to be inserted therein a clause which in effect relieved them from taking title or proceeding further until the approval of the City of the proposed subdivision was first obtained. On the other hand, in the deed of reconveyance of the two lots, wherein they undertook the obligation of constructing the offsite improvements in connection therewith, no such contingency or reservation was expressly or impliedly made. Having assumed the risk of unfavorable action by the City, and the refusal by the City clearly not falling within the meaning of the terms "inevitable accident," "irresistible force," or "fortuitous event," they must be held obligated to make good the penalty incurred.

■ The remaining question is whether plaintiff may also demand specific performance of the principal obligation. Under LSA–C.C. Article 2125, supra, the creditor cannot demand the principal and the penalty together unless the latter be stipulated for the mere delay. Finding as we do that the note herein sued on was executed by defendants to enforce or to secure the performance of the principal obligation and not for the mere delay in doing so, plaintiff cannot now exact, and defendants are released and relieved of, the obligation to install and furnish offsite improvements to plaintiff's property.

For the foregoing reasons, the judgment of the lower court is affirmed, costs of this appeal to be borne equally by plaintiff and defendants.

On Application for Rehearing

PER CURIAM.

In their application for a rehearing herein, appellants contend that, since the rendition of the judgment in the lower court, all of the off-site improvements described in the sale reconveying lots Nos. 19 and 20 have been completed.

In his answer to the application for a rehearing, appellee denies this contention and avers that the only improvements in place about these lots are those which were necessary for the builders (appellants) to reach the rest of the property which they purchased from appellee in order to develop same for sale. Appellee admits that the street and curb gutter bottoms are in place. He states that sidewalks have not been placed in front of the property, nor have gas and sewerage lines been run; that appellants are incorrect in contending that appellee has received the improvements called for.

Inasmuch as we have held that plaintiff cannot now exact, and defendants are released and relieved of, the obligation to install and furnish off-site improvements to plaintiff's property, it would seem that, in the interest of justice, the rights of appellants to institute proceedings for the value of the work performed by them since the judgment was rendered in the lower court should be reserved to them.

It is therefore ordered that the rights of all parties, if any they have, of every nature and kind, be reserved to them, in any future proceedings which may be instituted by appellants for the value of the work performed by them since the rendition of the judgment in the lower court in this cause.

Rehearing denied.