254 So.2d 104 (1971)
ADMIRAL PAINT COMPANY, Inc., Plaintiff-Appellee,
v.
Samuel W. GOLTZMAN, d/b/a American Scrap Material Company, Defendant-Appellant.
No. 3578.
Court of Appeal of Louisiana, Third Circuit.
October 22, 1971.
Rehearing Denied November 23, 1971.
Writ Refused January 6, 1972.
*105 Brame, Stewart & Bergstedt, by Joe A. Brame, Lake Charles, for defendant-appellant.
Camp, Carmouche, Palmer, Carwile & Barsh, by Charles Romano, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, HOOD, and DOMENGEAUX, Judges.
FRUGÉ, Judge.
This suit was instituted by the plaintiff-appellee to recover damages sustained through the delayed contractual performance of defendant-appellant. The trial judge found liability on the part of the defendant and awarded $2,700 pursuant to a penal clause provision in the contract executed by the parties in question.
The defendant appeals stating that there was no consideration for this penal clause, and in the alternative that uncontrollable and irresistible forces prevented defendant from timely performing his duty. Specifically, defendant alleges that: (1) rain, (2) ill health, (3) double work required by plaintiff, (4) loss of railroad facilities, and (5) breakdown of dragline, prevented defendant from timely performing. Plaintiff answered appeal and prays that the award of the trial judge be increased to the amount of $3,225.
The facts of this case are simple and brief. On December 20, 1968, the plaintiff tendered to defendant an offer to purchase defendant's rights as a lessee of certain lands located in Lake Charles, Louisiana, for the sum of $48,000. The following day defendant accepted this offer, and $15,000 was given as a down payment. On February 5, 1969, a formal instrument was written and signed by the parites, which was in essence an assignment of defendant's rights in the property to the plaintiff. On that same day, February 5th, there was also entered into by the parties a separate agreement, the pertinent portion of which stated that in the event the defendant failed to remove his property and equipment from the premises in question by April 30, 1969, defendant would pay plaintiff $25 per day. The property was not cleared by defendant, Goltzman, until September 6th of the same year, resulting in this litigation.
The execution of contracts by parties cannot be taken lightly by the courts of this state. In actuality, obligations entered into by parties have the effect of law upon those parties, and only they, within the bounds of the law, can modify, amend, or terminate their own "legislation". When disagreement emerges and subsequent litigation arises as to an obligation, it becomes the duty of the court to ascertain the intent of the parties in order to give the contract legal effect and simultaneously establish the rights and duties involved. Louisiana Civil Code, Article 1945.
The manner in which individuals may contract is diverse and broad. Within the confines of the law, there are contained very few limitations as to the method, fashion, or system by which one may obligate himself to perform. The requirement that only one instrument be employed in drawing a contract is not among those limitations.
*106 When more than one instrument is used, it becomes necessary to ascertain whether or not the parties contemplated that all are to be construed together in deriving the totality of the contract, thus, enabling complete evaluation as to the rights and obligations of the parties. Hirsh v. Miller, 167 So.2d 539 (La.App. 4th Cir., 1964), rehearing denied October 7, 1964;[*] Harper v. Home Indemnity Company, 140 So.2d 653 (La.App. 2nd Cir., 1962), rehearing denied May 9, 1962; Action Finance Corporation v. Nichols, 180 So.2d 81 (La. App. 2nd Cir., 1965); Gulf Oil Corporation v. Adams, 209 So.2d 770 (La.App. 2nd Cir., 1968), writ refused, June 28, 1968.
The intention of all parties then is what this court seeks to find. From an examination of the record, it would seem that the penal clause in question was entered into in furtherance of the primary obligation of assignment. The defendant, Mr. Goltzman, who contests this reasoning, himself testified as follows:
"Q. Mr. Goltzman, why did you sign that agreement?
"A. Well, the first agreement that I signed * * * it had to do with the first agreement * * * this was just to finish up the agreement."
The use of the penal clause in contracts is a right of which individuals may take advantage. Speculatively, it would seem that its utility is in the possible prevention of litigation and the necessary expense that follows. It establishes damages before a breach and provides a deterrent against tardy performance by the obligor. Comment, 33 Tul.Law Rev., 198, 199. In his treatise, Traité Élémentaire De Droit Civil, Vol. II, No. 253, p. 153, Planiol states:
"The parties often foresee the nonperformance or the tardy performance, and they themselves fix in advance the amount of the indemnity which is to be paid in case that happens. This is done by means of an agreement called a penalty clause: it is ordinarily inserted in the principal act, but it is equally valid if it is made afterwards, by a separate act. The penalty clause is therefore a contractual liquidation of damages, which is made arbitrarily, because it is not known in advance what the real damage will be."
The court, therefore, believes that the penal clause in question was made and executed by the parties in furtherance of the primary obligation which was the assignment to the plaintiff of the defendant's rights in the leased premises. The cause of this primary obligation then was equally the cause of the secondarily obligating penal clause. Louisiana Civil Code, Articles 2117-2129.
In the separate penal provision of February 5, 1969, it is stated:
"In the event that I do not remove all the properties inside the buildings by February 15, 1969, or the materials outside the premises by April 30, 1969, and thoroughly clean the premises, I shall pay a penalty to Admiral Paint Company, Inc. of $25 per day until such properties are completely removed and the premises thoroughly cleaned, provided that if such work is delayed past the above deadline by reasons beyond my control, that penalty will not be invoked for a said period of time."
Since this court does agree with the trial judge in the finding that there was sufficient cause to substantiate the penal clause in question, it becomes necessary to evaluate appellant's assertion that factors beyond his control justified delayed performance. Specifically, the relevant portion of that clause is the phrase "by reasons beyond my control".
Louisiana Civil Code, Article 2120 states that the penalty that has been stipulated *107 shall not be incurred if there be a lawful excuse for the non-performance by the obligor for reasons such as an inevitable accident or irresistible force. The penal provision in question obviously made reference to this article. Thus, the problem arises in defining "inevitable accident or irresistible force".
Although this court sympathizes with the difficulties of the defendant, it cannot grant relief to a party for his breach in an obligation which he himself has contracted to perform. An added discovery of facts or circumstances that entail more difficulty in the performance of an obligation, difficulties which perhaps were not actually foreseen, will not release an obligor from his timely and proper performance. Louisiana Civil Code, Article 1891; Picard Const. Co. v. Board of Commissioners of Caddo Levee District, 161 La. 1002, 109 So. 816 (1926); Sicula Oceanica, S. A. v. Wilmar Marine Engineering and Sales Corp., 413 F.2d 1341 (5th Cir., 1969); 6 Corbin on Contracts, Sec. 1333.
When one contracts to perform a certain obligation within a specified time, it is presumed that he has taken into account all the possible malfunctions, difficulties, and potential obstacles, that could prevent timely performance. Only those unforeseen, totally uncontrollable events, many times referred to as Acts of God, should have been excluded from his calculations. With this reasoning, we believe the jurisprudence of this State is in agreement. Hughes v. Breazeale, 240 La. 126, 121 So.2d 510 (1960); Popich v. Fidelity and Deposit Company of Maryland, 231 So.2d 604 (La.App. 4th Cir., 1970), rehearing denied, March 9, 1970; Farnsworth v. Sewerage & Water Board of New Orleans, 173 La. 1105, 139 So. 638 (1932).
None of the events enumerated by the defendant, as having prevented timely performance, can be said to be encompassed by this test. The possibility of rain, ill health, and loss of railroad facilities are all factors that should have been foreseen, or should have at least been given consideration before defendant agreed to move his property before April 30th.
As to the allegation that plaintiff required double work on the part of the defendant, we find no merit. The record reflects only that the plaintiff requested defendant to remove certain equipment at specific areas of the land before he removed equipment from other areas. In complying with this request, we find no reason why the defendant did not remove the equipment entirely from the land. He gives no reason why certain equipment and scrap metal should necessarily have been moved to a different section of the same property.
The trial judge excused the defendant from performing his obligation for a period of 21 days due to the breakdown of defendant's dragline. The amount in question is $525. We fail to see any distinguishing factor which would necessarily put the breaking down of this equipment under the category of an unforeseeable, uncontrollable event, as contemplated by the courts of this State. In his testimony at the trial, Mr. Goltzman stated that the dragline was very old and implied that its breakdown and subsequent need for repair were expected. The plaintiff's assertion then that these 21 days should be included in the figuring of the damages, is correct.
Alleged also by defendant was the contention that Sundays should not be included in the calculation of damages. We see no merit to this argument. Mr. Goltzman breached his promise to clear the premises by April 30, 1969, and agreed that in the event of such a breach he would pay $25 a day as a penalty. Nothing of the Lord's Day was mentioned. It would seem rather that he had the prerogative of working on Sundays and even at night in order to reduce the damages which Admiral was sustaining.
*108 In the judgment rendered by the trial judge, interest of 5% per annum was provided for from October 9, 1969, to July 27, 1970, and interest of 7% from July 28, 1970, until paid in full. This segregation of interest rates was obviously granted pursuant to Act 315 of 1970 which amended Article 1938 of the Civil Code by raising the legal interest rate from 5% to 7%. Subsequent to the trial judge's decision, however, it has been held that the legal rate of interest will be fixed at the appropriate percentage as of the date of judicial demand. Ducote v. Life Insurance Company of Louisiana, 245 So.2d 531 (La.App. 3rd Cir., 1971); Trouard v. First National Bank of Lake Charles, 247 So.2d 607 (La. App. 3rd Cir., 1971); Hebert v. Travelers Insurance Co., 245 So.2d 563, 568 (La.App. 3rd Cir., 1971).
For the foregoing reasons, the judgment of the trial court is amended in that the award granted should be increased from $2,700 to $3,225; and as thus amended, affirmed with legal interest of 5% from date of judicial demand until paid. Defendant-appellant is to pay all costs.
Amended and affirmed.
NOTES
[*] Writ issued at a later date on grounds not relevant to the present case.