322 So.2d 883 (1975)
CALCON, INCORPORATED, Plaintiff-Appellee,
v.
The YOUNG COMPANIES, INC., Defendant-Appellant.
No. 10477.
Court of Appeal of Louisiana, First Circuit.
November 24, 1975.
*884 Edward W. Gray, Baton Rouge, for appellant.
John B. Noland, Baton Rouge, for appellee.
Before SARTAIN, BAILES and PICKETT, JJ.
SARTAIN, Judge.
Calcon, Inc. (Calcon) instituted this suit against The Young Companies, Inc. (Young) for damages for alleged breach of contract. The trial judge, for oral reasons assigned, entered judgment for Calcon for the sum of $20,054.37, from which judgment Young has appealed. Calcon has *885 answered the appeal urging that the trial judge erred in failing to award it the additional sum of $2,000.00 for loss of anticipated profits. We affirm.
Young is the owner-contractor of a two hundred ninety-eight unit apartment complex known as Chateau Dijon located on Essen Lane in the City of Baton Rouge. Under date of January 8, 1973, Calcon entered into a written contract with Young whereby the former obligated itself to perform the following work during the construction of the complex, viz.:
"1. Tape and float all sheetrock, including furnishing all metal corners.
2. Spray acoustical ceilings.
3. Caulking all exterior windows & doors.
4. Stripping parking area.
5. One coat interior walls, two coats in kitchen, baths, door, jams and base. Two coats exterior." (Emphasis added)
The aforementioned contract further provided that Calcon was to furnish all materials and to complete the task assigned to it in a thoroughly workmanlike manner in accordance with specifications prepared by ADH Systems, Inc. which were supposed to have been dated and signed by the parties executing the contract. These specifications were never dated nor signed nor furnished to Calcon by Young.
On October 18, 1973, Calcon was notified by telegram that its contract was cancelled for its failure to perform "good workmanship". The telegram was signed by the job superintendent, Bill Wilson. In his oral reasons for judgment the trial judge found that the defendant did, in fact, breach the contract by forcing the plaintiff off the job and terminating its work on the project in question. The award was itemized as follows: $10,894.35, the stipulated retainage; $1,660.00 for extra work; and, $7,500.00 for anticipated profits.
There are two principal issues for resolution, one legal and the other factual.
The legal issue concerns the admissibility of the specifications mentioned above. It is noted that Item 5 of the contract calls for "one coat interior walls, . . ." and does not designate any particular brand or grade of paint. On the other hand the specifications with respect to interior walls, provide:
"1. Gypsum boardtexture, size and one coat Alkyd flat enamel, Napko or equal."
When the defendant endeavored to elicit testimony to show that the specifications were in fact a part of the contract and that Calcon did not perform services in accordance with the specifications an objection was made as to the admissibility of the specifications. The trial judge sustained the objections. The specifications and testimony relative to them were made a part of the record by proffer of the same as permitted under C.C.P. Art. 1636. It is conceded that Calcon applied one coat of PPG Apartment House Latex, a paint that it determined was sufficient to satisfy the one coat requirement of the written portion of the contract. Young, on the other hand, argues that an Alkyd flat enamel, Napko paint or equal, should have been used.
We agree with the ruling of the trial judge that the specifications cannot be considered as part of the contract entered into between the parties to the litigation. C.C. Art. 1761 provides:
"A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement."
When a controversy arises between the parties to a contract and litigation follows, it becomes the duty of the court to ascertain the intent of the parties in order to give the contract legal effect and thereby *886 establish the rights and duties involved. C.C. Art. 1945; Admiral Paint Company v. Goltzman, 254 So.2d 104 (La.App.3rd 1971); writs refused, 260 La. 289, 255 So.2d 772.
Further, contracts need not be imposed in a single instrument but may include documents by reference thereto. Admiral Paint Co. v. Goltzman, supra; and, Action Finance Corporation v. Nichols, 180 So.2d 81 (La.App.2nd 1965).
Thus, the question is whether it was the intent of the parties that the specifications be included in and made a part of the contract. It must be answered in the negative. The contract itself was prepared by the defendant and signed by Mr. Curtis Williams. Mr. Williams did not testify though he was identified as a vice-president of the defendant corporation. It is noted that the contract itself provided that the specifications were to be "dated and signed" by the parties. These specifications were never presented to nor seen by the representatives of the plaintiff prior to the institution of this litigation. Likewise, there is no evidence in the record before us that it was ever dated and signed by anyone on behalf of the defendant.
Plaintiff commenced work under the contract in February of 1973 and continued to fulfill its obligations thereunder until October 18, 1973. During this period of time at least three job superintendents, agents of the defendant, who had direct supervision over plaintiff's employees, were not only not furnished a copy of the specifications but had never seen a set of them. There were none on the job site itself. Under these circumstances defendant can not now be heard to say that it was the intent of the parties that the proffered specifications were to be a part of the contract.
We now turn to Calcon's claim on the merits, i.e., that Young terminated its contract with Calcon without just cause. This is a basic question of fact.
It is implicit in every construction contract that the work of the painter is to be performed in a good, workmanlike manner free from defects attributable to either faulty materials or poor workmanship. C.C. Art. 2769; Rathe v. Maher, 184 So.2d 256 (La.App. 1st 1966).
In the instant case Young contends (1) that plaintiff was dilatory in the execution of the contract and (2) that the paint used by Calcon was inferior. The burden of proving these charges rests with Young. Rathe v. Maher, supra.
The evidence in the record does not support a finding that Calcon was either behind schedule, holding up the work of other subcontractors, or in any way deficient in the execution of its work from a time point of view.
Mr. Bill Wilson, who became job superintendent for Young, replaced Mr. Anthony Graza on October 10, 1973. Mr. Graza testified that as of that date Calcon was on schedule and possibly ahead of schedule. Mr. Graza further testified that at no time did he consider Young to be behind schedule. Our perusal of Mr. Wilson's testimony in this respect leaves us with the distinct impression that he was under orders from his superiors to expedite the completion of the apartment complex and that it was Mr. Wilson's individual determination that Calcon could execute its work in a quicker fashion by the hiring of extra painters. The other evidence in the record is to the contrary, namely that a painter can not satisfactorily complete its work until the carpentry, plumbing and electrical work has been substantially completed.
The coordination of the various crafts on a complex of this size is indeed a difficult task but the testimony relative to the expectations of Mr. Wilson is not supported by the testimony of other witnesses.
The real issue in this case involves the charge that Calcon adulterated its paint by adding equal amounts of water to the *887 paint. An expert witness, Dr. Charles William Walker, testified that he performed a materials analysis on some samples that he took from one apartment. The result of his test showed that the paint had been diluted with approximately fifty percent water. The test was performed by magnifying the sample seven hundred fifty times its actual size. When this was accomplished the porosity of the paint disclosed the alleged water content. He conceded that this could not be ascertained by visual observation. When asked if he took samples from other apartments he answered in the negative saying that he viewed several other apartments and they appeared to him to be typical of the one from which he took the sample. This expert testimony was not commented on by the trial judge. We must therefore assume that the trial judge considered the remaining evidence of other witnesses to have preponderated over that of Dr. Walker.
We feel that it would serve no useful purpose here to reiterate in detail the conflicting testimony of the many witnesses, both lay and expert, concerning the quality of the paint. It suffices here to say that all of the witnesses presented by Calcon stated that the paint used by Calcon appeared to them to be satisfactory in every respect. Most of these witnesses conceded that in a one coat application there will be weak areas and that the sheetrock beneath the paint will be discernible.
Mr. Harold Lane Thompson, Sr., a licensed architect, was accepted by the court as an expert in the field of apartment construction. This witness had considerable experience in the design, construction and inspection of multiple housing units. He stated that it was the general rule to use a one coat application of PPG Apartment House Latex and that the work performed by Calcon was acceptable and executed in a good workmanlike manner.
Of particular significance to us is the fact that Mr. Graza, who was the job superintendent for Young throughout the major portion of Calcon's work, considered the job performed by Calcon to be satisfactory and acceptable for a one coat application.
Mr. Wilson was emphatic in his opinion that the apartment should have been painted first with the primer and then with an alkyd base paint. When Mr. Wilson terminated Calcon's contract he did not know that the contract called for a one coat application and did not require an alkyd base paint.
The trial judge, faced with this conflict in the testimony, resolved that Young had failed to bear the burden of proving that Calcon had indeed failed to perform its end of the obligation in a good, workmanlike manner, free from defects as to both material and workmanship. We are not disposed to say that the trier of fact committed manifest error in this respect.
The remaining issue relates to Calcon's answer to the appeal seeking an increase in the amount awarded to it for loss of anticipated profits from $7,500.00 to $9,500.00. The evidence reflects that there was some disparity in the testimony pertaining to some of the charges made by Calcon. We note that Calcon had received advance payments for a total of three hundred fifteen units whereas Calcon had completed work on only two hundred seventy-three units. It is true that some of the units had to be reworked because of subsequent water damage. However, we do not find any justification for finding that forty-two units had to be reworked. It is an obvious error on Calcon's part and undoubtedly a factor considered by the trial judge in declining to adhere to Calcon's contention that it was entitled to $9,500.00 for this item. A reduction by $2,000.00 or the award of $7,500.00 is within the sound discretion of the trial judge and we find no reasonable justification for modifying this award. C.C. Art. 1934(3).
*888 Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellant's costs.
Affirmed.